James B. MASONER, Petitioner–
Appellant,

v.

Otis THURMAN, Warden,
Respondent–Appellee.

No. 92–55116.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 4, 1993.

Decided June 24, 1993.

Philip A. Rafferty, Long Beach, CA, for petitioner-appellant.

Elaine F. Tumonis, Deputy Atty. Gen., Los Angeles, CA, for respondent-appellee.

Before: WALLACE, Chief Judge, and SNEED and HALL, Circuit Judges.

WALLACE, Chief Judge:

Masoner, a California state prisoner, appeals from the district court's order denying his petition for a writ of habeas corpus. The district court exercised jurisdiction pursuant to 28 U.S.C. § 2254. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 2253. We affirm.

## I

On March 4, 1987, Masoner attended a cocktail party where he consumed alcoholic beverages. As he prepared to leave the party, Masoner's associates advised him that he was in no condition to drive. Despite resistance from Masoner, his associates, Monnin and Barber, accompanied Masoner home; Masoner rode with Barber while Monnin drove Masoner's car. Masoner was uncooperative and somewhat incoherent. After extensive searching, the men located Masoner's house on a cul-de-sac at the top of a hill. When Monnin got out of Masoner's car, Masoner entered it and began to drive out of the cul-de-sac down the hill. Barber and Monnin followed in Barber's car. Masoner drove to the bottom of the hill, failed to negotiate a curve in the road, and crashed through a house, killing four-year-old Jessica Shaner and injuring other occupants. A subsequent blood test indicated that at the time of the crash Masoner's blood alcohol level was .26%.

Following a jury trial, Masoner was convicted of second-degree murder, Cal.Penal Code § 187(a), gross vehicular manslaughter while intoxicated, Cal.Penal Code § 191.5, driving under the influence causing injury, Cal.Veh.Code § 23153(a), and driving with a blood alcohol level of .10% or greater causing injury, Cal.Veh.Code § 23153(b). After exhausting state remedies, Masoner filed a petition for a writ of habeas corpus, which the district court considered on the merits and dismissed with prejudice.

Masoner raises three issues on appeal. The first concerns the propriety, under the due process clause of the Fourteenth Amendment, of his being convicted of both murder and manslaughter. The second and third concern the validity of the trial court's jury instructions.

The district court's decision to deny Masoner's petition for habeas corpus is reviewed de novo. *Thomas v. Brewer*, 923 F.2d 1361, 1364 (9th Cir.1991).

## II

Masoner contends that the district court erred in denying his petition for a writ of habeas corpus because the jury's finding Masoner guilty of both manslaughter and murder was an inconsistent verdict that violated his right to due process of law guaranteed by the Fourteenth Amendment. This argument presents a question of law which we review de novo.

The jury's verdict on Count II found Masoner "guilty of the crime of GROSS VEHICULAR MANSLAUGHTER WHILE INTOXICATED, ... in that the said defendant did unlawfully kill Jessica Shaner, a human being, without malice aforethought, in the driving of a vehicle." The trial court had instructed the jury: "The crime of manslaughter is the unlawful killing of a human being without malice aforethought." This instruction, however, was read as part of the lesser included offense instructions for the second-degree murder charge in Count I. The instructions on Count II never mentioned malice. The charge to the jury on Count II stated "[t]he crime of gross vehicular manslaughter while intoxicated is the unintentional but unlawful killing of a human being in the driving of a vehicle where the driving is in violation of Section 23152 or section 23153 of the Vehicle Code, and the killing was the proximate result of the commission of a lawful act which might produce death in a grossly negligent manner." The jury also convicted Masoner on Count I of second-degree murder. California law defines murder as "the unlawful killing of a human being ... with malice aforethought." Cal.Pen.Code § 187. Masoner argues that the verdicts under Counts I and II are un-

constitutionally inconsistent, apparently on the theory that his conviction of manslaughter ("killing ... without malice") constitutes an acquittal of murder ("killing ... with malice").

■ The general rule is that jury verdicts on multiple counts are insulated from review on the ground that they are inconsistent. *United States v. Powell*, 469 U.S. 57, 68–69, 105 S.Ct. 471, 479, 83 L.Ed.2d 461 (1984); *United States v. Hart*, 963 F.2d 1278, 1281 (9th Cir.1992). But this rule was developed in response to a situation in which a defendant logically could be guilty of two counts or neither, and the jury convicts on only one. It is inapplicable to the situation, alleged by Masoner to exist here, where a defendant logically could be guilty of either one count or the other, but not both, and the jury convicts of both. The Supreme Court recognized this distinction in *Powell. See* 469 U.S. at 69 n. 8, 105 S.Ct. at 479 n. 8 ("Nothing in this opinion is intended to decide the proper resolution of a situation where a defendant is convicted of two crimes, where a guilty verdict on one count logically excludes a finding of guilt on the other.").

We stated but did not hold in *United States v. Duz–Mor Diagnostic Laboratory, Inc.*, 650 F.2d 223, 226 n. 3 (9th Cir.1981), that although an inconsistent jury verdict on multiple counts is not ordinarily grounds for reversal, it may be considered where a defendant is convicted of mutually exclusive offenses, such that the defendant could have been guilty of one or the other, but not both. However, when jury verdicts are not necessarily inconsistent, we need not consider whether inconsistency would mandate reversal. *United States v. Menna*, 451 F.2d 982, 984 (9th Cir.1971), *cert. denied*, 405 U.S. 963, 92 S.Ct. 1170, 31 L.Ed.2d 238 (1972).

■ We hold that a due process challenge to a jury verdict on the ground that convictions of multiple counts are inconsistent with one another will not be considered if the defendant cannot demonstrate that the challenged verdicts are necessarily logically inconsistent. If based on the evidence presented to the jury any rational fact finder could have found a consistent set of facts supporting both convictions, due process does not require that the convictions be vacated.

■ Masoner's argument presumes that in order to convict him of manslaughter, the jury necessarily found that he acted "nonmaliciously." The jury instructions on Count II, however, never referred to malice. The trial court did not list "absence of malice" as an element of the crime of gross vehicular manslaughter while intoxicated, and in reaching its verdict on that count, the jury need never have considered the issue of malice. On the other hand, the jury necessarily found beyond a reasonable doubt that Masoner acted with malice in order to reject the lesser included offense and convict him of second-degree murder on Count I. The conviction on Count II cannot reasonably be understood as an acquittal of the Count I charge.

When faced with cases in which defendants have been convicted of both murder and manslaughter, state appellate courts have often focused on the jury instructions to determine whether the jury necessarily reached incompatible conclusions regarding a defendant's mental state. *Compare State v. Moore*, 458 N.W.2d 90, 93–94 (Minn.1990) (vacating convictions for first-degree murder and manslaughter because, as instructed, jury necessarily found that defendant's act was both intentional and reckless, mental states court determined to be mutually exclusive), *and People v. Hoffer*, 106 Ill.2d 186, 88 Ill.Dec. 20, 23–25, 478 N.E.2d 335, 338–40 (vacating convictions for murder and voluntary manslaughter because, as instructed, jury necessarily found that defendant simultaneously had mutually exclusive beliefs regarding justifiability of conduct), *cert. denied*, 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985), *with State v. Barsness*, 473 N.W.2d 325, 327–28 (Minn.App.1991) (affirming convictions of second-degree murder and manslaughter where instructions permitted jury to conclude that although defendant believed her actions would result in death, defendant had not formed purpose or design to cause death), *and People v. Deacon*, 130 Ill.App.3d 280, 85 Ill.Dec. 549, 554–56, 473 N.E.2d 1354, 1359–60 (affirming convictions of murder and involuntary manslaughter where instructions permitted jury to convict defendant of both

counts without finding any element of either offense both to exist and not to exist, and mental states described in jury instructions were not mutually exclusive), *cert. denied,* 474 U.S. 921, 106 S.Ct. 253, 88 L.Ed.2d 260 (1985). In the present case, the instructions did not require the jury to make necessarily inconsistent findings in order to convict Masoner of both second-degree murder and gross vehicular manslaughter while intoxicated.

Part of the confusion in Masoner's argument stems from an implicit, and incorrect, assumption that California's crime of gross vehicular manslaughter while intoxicated is indistinguishable from generic manslaughter. The trial court's jury instructions on the two offenses make it clear that they are very different. As a lesser included offense of second-degree murder, the jury was instructed it could convict Masoner of manslaughter if it found that he acted "without malice aforethought." The charge to the jury on the offense of Count II, however, stated that "[t]he crime of gross vehicular manslaughter while intoxicated is the unintentional but unlawful killing of a human being in the driving of a vehicle where the driving is in violation of Section 23152 or Section 23153 of the Vehicle Code, and the killing was the proximate result of the commission of a lawful act which might produce death in a grossly negligent manner." The court went on to instruct the jury in the elements of the offense: (1) the driver violated section 23152 or 23153; (2) the driver committed with gross negligence an unlawful act or a lawful act which might cause death; and (3) the act was the proximate cause of a person's death. Malice does not enter into the equation.

In convicting Masoner of murder the jury clearly concluded beyond a reasonable doubt that he acted with malice. The absence of a malice requirement under Count II results from that offense having a less culpable mental state, not from a requirement that the defendant act nonmaliciously. Because a rational jury could have found a consistent set of facts supporting Masoner's convictions on both Count I and Count II, due process does not require that we vacate Masoner's murder conviction.

## III

Masoner raises two challenges to the trial court's jury instructions. He argues that the trial court gave an unconstitutionally vague definition of implied malice for second-degree murder, and that the trial court erred in instructing the jury that speeding constitutes an act that is inherently dangerous to human life. When a habeas petitioner asserts a due process violation on the basis of jury instructions, our review

is limited to determining whether an allegedly defective jury instruction "so infected the entire trial that the resulting conviction violates due process." It is not sufficient that the instruction is erroneous; rather the petitioner must establish that there was a reasonable likelihood that the jury applied the instruction in a way that violated a constitutional right.

*Carriger v. Lewis,* 971 F.2d 329, 334 (9th Cir.1992) (en banc) (*Carriger*) (citation omitted), *cert. denied,* —— U.S. ——, 113 S.Ct. 1600, 123 L.Ed.2d 163 (1993), *quoting Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *see also Boyde v. California,* 494 U.S. 370, 380–81, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990) (*Boyde*). "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736–37, 52 L.Ed.2d 203 (1977). Thus, we consider Masoner's contentions based on alleged erroneous jury instructions under a standard more deferential than plain error review, to determine whether it is reasonably likely that the jury instructions resulted in a constitutional violation.

### A.

■ Masoner argues that California's implied malice jury instruction is unconstitutionally vague. Masoner contends that the phrase "high degree of probability that it will result in death" did not give the jury sufficient guidance to determine whether he acted with the requisite malice to be guilty of

second-degree murder. The trial court instructed the jury: "Malice is implied when the killing results from an intentional act involving a high degree of probability that it will result in death, ... or to put it another way ... the natural consequences of which are dangerous to life." Masoner contends that this instruction is so vague as to violate due process, and that a writ of habeas corpus must issue because a "conviction should not rest on ambiguous and equivocal instructions to the jury on a basic issue." *United States v. Terry*, 911 F.2d 272, 280 (9th Cir.1990), *quoting United States v. Bagby*, 451 F.2d 920, 927 (9th Cir.1971).

In California, a defendant may be guilty of second degree murder when malice is implied. Cal.Penal Code §§ 188, 189. "The concept of implied malice has both a physical and a mental component." *People v. Nieto–Benitez*, 4 Cal.4th 91, 106, 13 Cal.Rptr.2d 864, 840 P.2d 969 (1992) (*Nieto–Benitez*). The physical component is satisfied by proof that the defendant committed a sufficiently dangerous act. *Id.* The mental component is satisfied by proof of the defendant's subjective awareness of the dangerousness of his or her actions. *Id.* at 107, 13 Cal.Rptr.2d 864, 840 P.2d 969; *see also People v. Watson*, 30 Cal.3d 290, 300, 179 Cal.Rptr. 43, 637 P.2d 279 (1981) (*Watson*). The portion of the jury instructions alleged by Masoner to be ambiguous concerns the physical component: he contends that the phrases "high degree of probability that it will result in death" and "the natural consequences of which are dangerous to life" fail to provide the fact finder with a sufficiently rigorous standard of dangerousness.

Under California law, "the[se] two linguistic formulations ... are equivalent and are intended to embody the same standard." *Nieto–Benitez*, 4 Cal.4th at 111, 13 Cal. Rptr.2d 864, 840 P.2d 969; *see also People v. Dellinger*, 49 Cal.3d 1212, 1218–19, 264 Cal. Rptr. 841, 783 P.2d 200 (1989) (*Dellinger*). California is by no means alone in its reliance on this sort of definition; several other states have condoned the use of a standard which requires the jury, in determining the question of implied malice, to assess the probability that death would result from a defendant's actions. *See, e.g., Commonwealth v. Seibert*, 622 A.2d 361, 366 (Pa.Super.Ct.1993) (malice may be implied where defendant exhibits unjustified disregard for probability of death or great bodily harm); *People v. Wofford*, 196 Mich.App. 275, 492 N.W.2d 747, 749 (1992) (death or great bodily harm is probable result of actions); *State v. Vigil*, 842 P.2d 843, 844 & n. 2 (Utah 1992) (act creating highly likely probability of death); *State v. Ortega*, 112 N.M. 554, 565, 817 P.2d 1196, 1207 (1991) (act creates strong probability of death or great bodily harm); *Simpkins v. State*, 88 Md.App. 607, 596 A.2d 655, 662 (1991) (death at least likely, if not certain, consequence of conduct), *cert. denied*, 328 Md. 94, 612 A.2d 1316 (1992); *People v. Jerome*, 206 Ill.App.3d 428, 151 Ill.Dec. 244, 248, 564 N.E.2d 221, 225 (1990) (strong probability of death or great bodily harm), *appeal denied*, 137 Ill.2d 668, 156 Ill.Dec. 565, 571 N.E.2d 152 (1991); *Vaughan v. Commonwealth*, 7 Va.App. 665, 670, 376 S.E.2d 801, 806 (1989) (cause of conduct likely to cause death or great bodily harm); *State v. Hutton*, 232 Kan. 545, 657 P.2d 567, 572 (1983) (plain and strong likelihood that death will follow contemplated act); *State v. Collazo*, 446 A.2d 1006, 1012 (R.I.1982) (unjustified disregard for probability of death or great bodily harm); *State v. Robinson*, 139 N.J.Super. 475, 354 A.2d 374, 381 (1976) (likelihood of death or grievous bodily injury); *State v. Mendell*, 111 Ariz. 51, 53, 523 P.2d 79, 82 (1974) (act involving high degree of probability that it would result in death).

Masoner provides no direct support for his contention that either or both of these challenged formulations is impermissibly vague. California courts have long held that malice may be implied where a defendant with a sufficiently culpable mental state does an act involving a high probability that death will result. *See Watson*, 30 Cal.3d at 300, 179 Cal.Rptr. 43, 637 P.2d 279. The California Supreme Court has expressly endorsed the formulations in this jury instruction as the correct statement of California's implied malice requirement. *Dellinger*, 49 Cal.3d at 1222, 264 Cal.Rptr. 841, 783 P.2d 200. Masoner nevertheless argues that because the phrase "high degree of probability" connotes numerical probabilities, and different jurors

may have used different numerical equivalents, the verdict may have been based on the fact that the jurors "felt that even a 10 percent, or so, chance of death" would suffice. Thus, Masoner's argument is that the individual jurors were unlikely to have identical interpretations of the phrases "high degree of probability" or "natural consequences." But the Supreme Court has firmly rejected such an argument as a ground for reversal:

> Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

*Boyde*, 494 U.S. at 380–81, 110 S.Ct. at 1198.

This instruction is not ambiguous. It is Masoner's burden to show "a reasonable likelihood that the jury has applied the challenged instruction" in such a way as to imply malice from a less dangerous act than the law requires. *Id.* at 380, 110 S.Ct. at 1197. Yet one could hardly imagine words clearer than "high degree of probability" to convey the dangerousness standard applicable in California of high probability or highly probable. *See Watson*, 30 Cal.3d at 300, 179 Cal.Rptr. 43, 637 P.2d 279. The jury was specifically instructed to find a high degree of probability, and we presume the jury followed its instructions. *United States v. Alston*, 974 F.2d 1206, 1210 (9th Cir.1992). Masoner has not carried his burden of showing otherwise. Clearly, he has failed to demonstrate the high threshold of infection required for this due process collateral attack argument. *See Carriger*, 971 F.2d at 334.

**B.**

For Counts I and II, the trial court instructed the jury on the lesser included offenses of involuntary manslaughter and vehicular manslaughter, respectively. The involuntary manslaughter instruction defined an unlawful killing as one occurring "during the commission of a misdemeanor which is inherently dangerous to human life, namely, the offenses of violation of vehicle codes 22350 and 22352 [the basic and prima facie speeding laws]." The vehicular manslaughter instruction contained essentially the same definition of unlawful killing. The trial court further instructed the jury that "[a] violation of the basic speed law is the commission of an act inherently dangerous to human life," and that a violation of the prima facie speed limit (in this case, 25 m.p.h.) constitutes "an act inherently dangerous to human life ... unless the evidence raises a reasonable doubt as to the question whether his speed was greater than was reasonable or prudent."

We need not decide whether these instructions created an improper presumption that a violation of the basic speed law is inherently dangerous and that a violation of the prima facie speed limit is inherently dangerous. Any such presumptions would apply only to the trial court's instructions on the lesser included offenses. Masoner, however, was convicted of neither involuntary manslaughter nor vehicular manslaughter. The jury convicted him of second-degree murder on Count I and gross vehicular manslaughter while intoxicated on Count II. Masoner does not contend that the instructions pertinent to either of these offenses created an impermissible presumption. Rather, he argues that the jury may have applied the presumption relating to the attendant circumstance of inherent dangerousness, an element of involuntary manslaughter, to establish an element of second-degree murder, namely that his driving "involv[ed] a high degree of probability that it will result in death" or was such that "the natural consequences of [it] are dangerous to life." *See Sandstrom v. Montana*, 442 U.S. 510, 524, 99 S.Ct. 2450, 2459, 61 L.Ed.2d 39 (1979) (holding unconstitutional jury instructions which jury may have interpreted as establishing mandatory rebuttable or conclusive presumption adverse to defendant on issue of intent); *McLean v. Moran*, 963 F.2d 1306, 1308–09 (9th Cir.1992).

Once again, the deferential standard of review determines our resolution of this issue. We need not resolve the *Sandstrom* question, because the allegedly impermissible presumption occurred in the context of the

instructions on the lesser included offenses. The written instructions, which were submitted to the jury, were divided into sections and clearly labeled, and the jury would have seen that these presumptions were given under the lesser included offenses, not the major offenses for which Masoner was convicted. In addition, the prosecutor's closing argument urged the jury to look to "the circumstantial evidence surrounding the acts themselves" to discern malice, and never referred to the speed laws or to any presumption when addressing this element. .

Masoner's petition challenges *only* his murder conviction, not his other convictions. Masoner relies on the fact that the jury was instructed "to consider all the instructions as a whole and ... to regard each in light of all the others" to support his contention that the jury must have made the leap from the lesser included offense instructions and applied the presumption to convict him of second-degree murder. But this instruction very well may have served to help the jury understand that Masoner was charged with different offenses of different degrees involving different required elements. It is not reasonably likely that the jury applied the presumption allegedly contained in the manslaughter instructions to shift the burden of proof to Masoner on the dangerousness element of second-degree murder.

Masoner relies on *Schwendeman v. Wallenstein,* 971 F.2d 313 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 975, 122 L.Ed.2d 130 (1993), which held unconstitutional the permissive presumption of reckless driving (an element of the crime of vehicular assault) based solely on the predicate fact of speeding, and concluded that the error was not harmless beyond a reasonable doubt. *Id.* at 316. But *Schwendeman* does not control. The defendant in that case was convicted of the offense for which the instructions created a presumption. Masoner, on the other hand, was convicted of second-degree murder and gross vehicular manslaughter while intoxicated, not the lesser included offenses for which he alleges the instructions created an impermissible presumption. We conclude that Masoner has not shown a reasonable likelihood that the jury was so confused by the trial

court's instructions that it applied the alleged presumption in arriving at a guilty verdict on the murder charge. We therefore need not address the validity of the alleged unconstitutional presumptions.

AFFIRMED.