**Milos KLVANA, Petitioner,**

v.

**STATE OF CALIFORNIA, CDC Sacramento, Respondents.**

**No. CV 94–0863–RMT (RMC).**

United States District Court,
C.D. California.

Dec. 15, 1995.

Milos Klvana, San Luis Obispo, CA, pro se.

Paul Ament, California Deputy Attorney General, Office of Attorney General, Los Angeles, CA, for respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

TAKASUGI, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Report and Recommendation of the United States Magistrate Judge, and has made a *de novo* determination of the Report and Recommendation.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) a Judgment shall be entered denying the petition for writ of habeas corpus and dismissing the action with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on petitioner and counsel for respondents.

## REPORT AND RECOMMENDATION ON A WRIT OF HABEAS CORPUS BY A STATE PRISONER

CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Robert M. Takasugi, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

### BACKGROUND

Petitioner Milos Klvana, a prisoner in state custody, was convicted on December 18, 1989, following a jury trial, of nine counts of second degree murder (Penal Code (P.C.) § 187(a)), five counts of aiding and abetting the practice of medicine without a license (Business & Professional Code (B. & P.C.) § 2053), one count of conspiracy to practice medicine without a license (P.C. § 182/B. & P.C. § 2053), nine counts of preparing a fraudulent insurance claim (Ins. C.

§ 556(a)(3)), ten counts of presenting a false insurance claim (Ins. C. § 556(a)(1)), two counts of grand theft (P.C. § 487), and two counts of perjury (P.C. § 118). Petitioner received a sentence of 53 years to life.

On November 30, 1992, the California Court of Appeal in a published opinion [1] affirmed petitioner's conviction on direct appeal and denied his petition for habeas corpus. The California Supreme Court denied review on February 17, 1993. Petitioner then brought a petition for writ of habeas corpus in this Court (CV 93–0780– RMT(SH)), which was dismissed without prejudice because petitioner had not exhausted his state court remedies on all claims.

The facts and circumstances underlying the convictions are set forth in detail by the California Court of Appeal. The murder counts arose from petitioner's actions as the treating physician for nine deliveries in which the infants were either stillborn or died soon after birth.[2] Following is a brief summation of the facts produced during the six month trial. Petitioner attended medical school in Czechoslovakia. After failing, due to poor performance, to complete a residency in obstetrics and gynecology in New York, and after being forced to resign a residency in anesthesiology at Loma Linda University upon the discovery that he was responsible for a patient's death, petitioner, in 1977, embarked on a private practice in the Los Angeles area.

From 1980–83, petitioner was on probationary status with the California Medical Board (hereafter Board, then known as the Board of Medical Quality Assurance) as a result of his misdemeanor convictions of 26 counts of prescribing controlled substances without a good faith prior examination. From 1977 through 1985, petitioner applied for staff privileges at various hospitals, often failing to disclose his probationary license status and misrepresenting himself as "board eligible" in obstetrics and gynecology. Of those hospitals where petitioner received staff privileges, all eventually revoked petitioner's privileges due to inadequate care or threatened to review petitioner's privileges, forcing his resignation. On May 2, 1984, the Los Angeles County Department of Health Services issued a cease and desist order prohibiting the delivery of infants at one of petitioner's clinics.

Throughout the period from 1977 to 1986, petitioner performed deliveries of infants in clinics he owned and at home deliveries. Between 1982 to 1986, the nine unsuccessful deliveries occurred which were the subject of the murder convictions. Because there was no dispute that petitioner's actions were an extreme departure (below) from the standard of care, the issue at trial was whether petitioner had the requisite mental state to support a conviction of second degree murder on a theory of implied malice.[3] To prove implied malice, the prosecution put on evidence from which the jury could infer that petitioner had the subjective knowledge that death or grievous bodily injury would likely result from his actions or omissions. Medical experts and others testified regarding the ways in which petitioner's conduct fell egregiously below the standard of care, including petitioner's failure to monitor the conditions of

---

1. *People v. Klvana*, 11 Cal.App.4th 1679, 15 Cal. Rptr.2d 512 (1992).

2. The murder counts, listed with the last name of the infant, are as follows: Count 1, Johnson; Count 2, Fava; Count 3, James; Count 4, Ginsberg; Count 8, Diederick; Count 20, Ennis; Count 23, Friel; Count 25, Palacios; and Count 31, LaVerne.

3. Jury instruction CALJIC 8.11 was given on implied malice.
 Malice is implied when:
 1. The killing resulted from an intentional act,
 2. The natural consequences of the act are dangerous to human life, and

3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life.
 When it is shown that a killing resulted from the intentional doing of an act with implied malice, no other mental state need be shown to establish the mental state of malice aforethought.
 The mental state constituting malice aforethought does not necessarily require any ill will or hatred of the person killed.
 The word "aforethought" does not imply deliberation or lapse of considerable time. It only means that the required mental state must precede rather than follow the act.

the mothers during delivery, especially those at high risk and those to whom he had given the labor-inducing drug Pitocin, petitioner's disregard of signs of infant stress, including the presence of meconium, petitioner's absence during delivery, petitioner's disregard of infants' exhibitions of obvious danger signs, including difficulty breathing, and petitioner's failure to perform high-risk deliveries in the hospital. These medical experts testified that through his own prior experience, charts and manuals in his office, drug inserts, and common knowledge within the medical community, petitioner had information that his actions or omissions would create grave risk to human life.

In addition, evidence was presented showing that petitioner had subjective knowledge that his actions or omissions endangered the lives of his patients, including that petitioner attempted to cover-up his conduct through inaccurate entries on the medical charts of his patients, that petitioner requested several mothers not to tell anyone what had happened, and that petitioner himself disposed of the remains of several dead infants. The prosecution also argued that the forced resignations of his residencies, particularly after the anesthesiology patient's death, and the revocation of hospital privileges, put petitioner on notice that he had inadequate ability to care for patients.

Defense counsel put on evidence that petitioner had successfully delivered many infants and had acted with care in other high-risk situations. No expert medical evidence was presented contradicting the testimony that petitioner's actions and omissions fell below the standard of care. In fact, defense counsel argued to the jury: "I don't disagree with the experts" with regard to the standard of care. (RT 18755).

On February 16, 1994, the present habeas corpus petition was filed. Respondents' initial return was filed on April 5, 1994. Because the petition contained certain unexhausted claims, the Court advised petitioner regarding his options. In the meantime, petitioner exhausted his claims through a petition for writ of habeas corpus to the California Supreme Court. On July 27, 1994, the Court ordered respondents to file a supplemental return to the petition addressing the merits. The supplemental return was filed on November 10, 1994. Petitioner filed his traverse on November 30, 1994.

Petitioner raises the following seven claims of ineffective assistance of trial counsel, primarily addressing the murder convictions: 1.) Counsel failed to investigate and present a defense related to petitioner's lack of the mental state required to support implied malice; 2.) counsel failed to present evidence of the mother's consent to natural childbirth for four of the nine murder counts; 3.) counsel failed to present the defense that tort law, not criminal law, should apply; 4.) counsel failed to investigate and argue that the jury instructions given on implied malice (CALJIC 8.11), manslaughter, and murder were unconstitutional because they mislead the jury on intent, motive and burden of proof; 5.) counsel failed to present evidence of petitioner's reasonable reliance on California regulatory agencies and of the absence of notice given to petitioner; 6.) counsel failed to investigate and present evidence that the drug Pitocin was not the cause of death in six of the counts, and that all newborns were taken home in satisfactory condition; and 7.) counsel failed to present evidence of lack of specific intent on the non-homicide counts and failed to argue the application of the "Good Samaritan" statute on the conspiracy count.

## ANALYSIS

### 1. Abuse of the Writ:

 Respondents argue that the present petition constitutes an abuse of the writ because the sole ground asserted—ineffective assistance of counsel—was not raised in petitioner's first federal habeas corpus petition. An abuse of writ claim may be made when a ground for relief is not set forth in an initial federal habeas corpus petition, but is set forth for the first time in a second habeas corpus petition. See 28 U.S.C. § foll. 2254, Rule 9(b); *Schlup v. Delo*, —— U.S. ——, —— n. 34, 115 S.Ct. 851, 863 n. 34, 130 L.Ed.2d 808 (1995); *McCleskey v. Zant*, 499 U.S. 467, 487, 111 S.Ct. 1454, 1466–67, 113 L.Ed.2d 517 (1991). If the second federal

habeas corpus petition raises new and different grounds for relief than the initial petition, it may be dismissed for abuse of the writ due to inexcusable neglect. *McCleskey,* 499 U.S. at 487–91, 111 S.Ct. at 1466–69; *Campbell v. Blodgett,* 997 F.2d 512, 515–16 (9th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 1337, 127 L.Ed.2d 685 (1994); *Harris v. Vasquez,* 949 F.2d 1497, 1511 (9th Cir.1990), *cert. denied,* 503 U.S. 910, 112 S.Ct. 1275, 117 L.Ed.2d 501 (1992); *see* 28 U.S.C. foll. § 2254, Rule 9(b).

■ To determine whether the petitioner has abused the writ, the courts apply the cause and prejudice standard. *McCleskey,* 499 U.S. at 494, 111 S.Ct. at 1470; *Harris,* 949 F.2d at 1511. To show cause, the petitioner must demonstrate that some objective factor impeded petitioner's efforts to raise the new claim in the initial petition. *McCleskey,* 499 U.S. at 493–94, 111 S.Ct. at 1469–70. Acceptable objective factors include interference by officials, making the assertion of the claim impracticable; a showing that the factual or legal basis for the claim was not reasonably available at the time the first petition was filed; and constitutionally ineffective assistance of counsel. *Id.* Here, because petitioner alleges ineffective assistance of counsel, the Court will consider the merits of petitioner's claims.

**2. Ineffective Assistance of Counsel:**

■ Claims of ineffective assistance of trial counsel are analyzed under the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner bears the burden of establishing both components. *Id.; United States v. Quintero–Barraza,* 57 F.3d 836, 840 (9th Cir.1995). First, petitioner must show that counsel's representation fell "below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688–89, 104 S.Ct. at 2064–65. In making this showing, petitioner must overcome the strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2065–66; *United States v. Palomba,* 31 F.3d 1456, 1460 (9th Cir.1994). Only if counsel's acts or omissions, examined within the context of all the surrounding circumstances, were outside the "wide-range" of professionally competent assistance, will petitioner meet this initial burden. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2065–66; *Quintero–Barraza,* 57 F.3d at 840. Conclusory allegations of ineffective assistance of counsel unsupported by specific facts do not warrant habeas corpus relief. *James v. Borg,* 24 F.3d 20, 26 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 333, 130 L.Ed.2d 291 (1994).

■ If petitioner makes this showing, he must then establish that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* The errors must not merely undermine confidence in the outcome of the trial, but must result in a proceeding that was fundamentally unfair. *Lockhart v. Fretwell,* 506 U.S. 364, 369–70, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993); *Quintero–Barraza,* 57 F.3d at 840.

■ In a federal habeas corpus action, a claim of ineffective assistance of counsel presents a mixed question of fact and law and receives *de novo* review. *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070; *Bonin v. Calderon,* 59 F.3d 815, 825 (9th Cir.1995). The deference to state court findings of fact required by 28 U.S.C. § 2254(d), however, is applicable in deciding ineffective assistance of counsel claims. *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070. Under these standards, the Court shall examine each of petitioner's claims.

**a. Mental Defense:**

■ Failure to investigate a possible defense may form the basis of a claim of ineffective assistance of counsel; however, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2065–67. Trial counsel's decision not to pursue an unproductive or unfruitful defense may be a reasonable strategic decision. *Bonin,* 59 F.3d at 833–35.

To determine whether prejudice resulted from the failure to investigate and present evidence, it is necessary to compare the evidence that actually was presented to the jury with the evidence that might have been presented had counsel pursued the investigation. *Id.* at 834. Only if there is a reasonable probability that the presentation of such evidence would have resulted in a different verdict will the failure to investigate warrant relief under the *Strickland* standards. *Id.* at 836. Here, although trial counsel presented no evidence directly addressing the petitioner's mental state, petitioner was examined by a psychologist at the behest of trial counsel. At sentencing, Dr. Irwin Lehrhoff, the defense clinical psychologist, testified that his staff had given petitioner a battery of psychological tests and that he had interviewed petitioner on two or three occasions. (RT 19509). Dr. Lehrhoff testified that the results of the tests revealed that petitioner "has his own scheme of things and will force reality to fit into his perception, even if there is contradictory evidence." (RT 19510). Dr. Lehrhoff further testified that despite significant objective evidence, petitioner believed that what he did was correct. (RT 19519). On cross-examination, the following exchange occurred between the prosecutor and Dr. Lehrhoff:

"[Prosecutor]: In other words, Doctor, you found no medical explanation that would cause you to say Dr. Klvana was unable to know what he was doing was dangerous to human life; is that correct?

[Dr. Lehrhoff]: That's correct."

(RT 19523). Thus, Dr. Lehrhoff's testimony regarding petitioner's mental state would have done nothing to exculpate petitioner.

Other psychiatric evidence is likewise unavailing. In the state habeas corpus action, petitioner submitted a report from another expert, Charles Scott Saunders, M.D., a psychiatrist, which indicated that petitioner suffered no medically recognized mental disorder or pathological personality traits. *People v. Klvana,* 11 Cal.App.4th at 1712, 15 Cal. Rptr.2d 512 (1993).[4] Dr. Saunders found that petitioner was compulsive, immature, not able to deal with emotions or criticism, negativistic, and "tends to ignore any criticism if at all possible." *Id.* at n. 23. Despite these personality traits, Dr. Saunders concluded that petitioner "had no subjective awareness that his practice posed life-threatening risks or a high probability of death for his patients." *Id.* While Dr. Saunders' conclusion might have aided the defense, Dr. Saunders' failure to link his conclusion with the personality traits he observed renders the report deficient. *Id.* at 1713, 15 Cal. Rptr.2d 512. The overwhelming circumstantial evidence showed that petitioner was aware that his actions posed a threat to his patients' lives, and the jury undoubtedly would have found Dr. Saunders' opinion on petitioner's subjective awareness to be unconvincing.

Neither psychological or psychiatric evaluation produced evidence that petitioner suffered from a medically recognized mental disorder, which would have reduced petitioner's subjective knowledge. Thus, petitioner cannot show that he was prejudiced by trial counsel's failure to present psychiatric evidence at trial. *See Bonin,* 59 F.3d at 836.

**b. Defense of Consent:**

Petitioner asserts that because the mothers in Counts 2, 3, 4, and 31 consented to natural childbirth, petitioner's conduct is excusable under P.C. § 187(b)(3).[5] In each of those four counts, substantial evidence that petitioner did not inform the mothers of the risks they were undertaking was produced; petitioner misled the mothers regarding the dangers of inducing labor in his office, his willingness and ability to transfer the deliveries to a hospital if necessary, and the risk of deliveries without standard monitoring equipment. (*See e.g.,* RT 8928–29,

---

**4.** The full report is found at Return to Petition, Exh. J's Exh. 1.

**5.** Section 187 provides in relevant part:

(a) Murder is the unlawful killing of a human being, or a fetus, with malice aforethought.

(b) This section shall not apply to any person who commits an act which results in the death of a fetus if any of the following apply:

\* \* \* \* \* \*

(3) The act was solicited, aided, abetted, or consented to by the mother of the fetus.

8954 (Count 2, Fava); RT 8225–8233, 8244, 8246–47, 8272–73 (Count 3, James); RT 11012–13 (Count 4, Ginsberg); and RT 17161, 17165–66, 17177–78 (Count 31, LaVerne)). Further, petitioner failed to inform the mothers that, under certain conditions, a Cesarean delivery would be necessary to safeguard the infant's health. (RT 8930 (Count 2, Fava)). In fact, one mother testified that she begged petitioner to perform a Cesarean and he did not. (RT 8950 (Count 2, Fava)). Moreover, petitioner failed to inform the mothers that he was not utilizing standard medical procedures to ensure the health of the infants and the mothers. (*See e.g.,* RT 8960–61, (Count 2, Fava); RT 8272–73, 8279–84 (Count 3, James)).

■ Under California law, a person consents to an act that would otherwise be criminal only if he or she has knowledge of the true nature of the act. *People v. Olds,* 154 Cal.App.2d 78, 82, 315 P.2d 881 (1957). The overwhelming evidence that the mothers were not informed of the life-threatening nature of petitioner's acts or omissions rendered the defense of consent unavailable. Also, in Count 4, the infant was delivered alive, and later died, precluding the defense under P.C. § 187(b)(3). Petitioner, thus, cannot show that trial counsel was ineffective or that petitioner was prejudiced by the failure to present the unmeritorious defense of consent. *See James,* 24 F.3d at 26; *Boag v. Raines,* 769 F.2d 1341, 1344 (9th Cir.1985).

### c. Tort Law:

■ Petitioner contends that his trial counsel were incompetent for failing to argue that tort law, rather than criminal law, should apply to the murder counts.[6] This claim is frivolous. Neither criminal law nor civil law are exclusive remedies for misconduct by a physician or non-physician. *See People v. Richards,* 17 Cal.3d 614, 620–21, 131 Cal.Rptr. 537, 552 P.2d 97 (1976) (criminal law not a substitute for civil law); *People v. Protopappas,* 201 Cal.App.3d 152, 171–72, 246 Cal.Rptr. 915 (1988) (difference between

criminal liability for implied malice and gross negligence); Cal.Evid.Code § 1300 (felony conviction admissible in civil action to prove fact essential to judgment). *See also Justus v. Atchison,* 19 Cal.3d 564, 576–79, 139 Cal. Rptr. 97, 565 P.2d 122 (1977) (holding that statute allowing for tort recovery for wrongful death (C.C.P. § 377) did not provide recovery for the death of a fetus; however, P.C. §§ 187 and 270 address death and injury to unborn child). Accordingly, trial counsel was not ineffective for failing to raise this meritless defense. *See James,* 24 F.3d at 26; *Boag,* 769 F.2d at 1344.

### d. Jury Instructions:

■ Unless petitioner can demonstrate that the jury instructions given by the trial court violated due process, he cannot show that defense counsel was ineffective for failing to object to the jury instructions. *Boag,* 769 F.2d at 1344. "[T]he only question . . . is whether the ailing [jury] instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991). "[I]n reviewing an ambiguous instruction . . . we inquire whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Id.* at 72, 112 S.Ct. at 482. (internal quotations omitted).

■ Here, petitioner only generally or conclusorily asserts that the jury instructions on motive, intent, and the burden of proof were misleading; he does not describe the manner in which the instructions misled the jury. For that reason alone, petitioner has not met his burden. *Masoner v. Thurman,* 996 F.2d 1003, 1006 (9th Cir.1993) (citing *Boyde v. California,* 494 U.S. 370, 380–81, 110 S.Ct. 1190, 1197–98, 108 L.Ed.2d 316 (1990)).

■ Moreover, a review of the jury instructions given in this case fails to establish a reasonable likelihood that the jury

---

**6.** In his petition, petitioner raises this claim as to counts 1, 2, 3, 4, 8, 20, 25, 31, and 35. Count 35, however, charged petitioner with presenting a fraudulent insurance claim; thus, the Court

assumes petitioner intended to raise this claim with regard to the nine murder counts, including Count 23.

applied the challenged instructions in a manner which would lead them to convict on a lesser showing than the law requires. For example, jury instruction CALJIC 2.90 was given on the burden of proof. (CT 10618). In *Victor v. Nebraska*, — U.S. —, —–—, 114 S.Ct. 1239, 1245–48, 127 L.Ed.2d 583 (1994), the Supreme Court upheld CALJIC 2.90, finding it not to be unconstitutional. On the issue of intent, jury instruction CALJIC 8.31 was given, requiring that for a finding of second degree murder the jury must find petitioner to have committed an act "the natural consequences of which are dangerous to life" and that the "act was deliberately performed with knowledge of the danger to, and conscious disregard for, human life." (CT 10636). As cited earlier, the jury was given jury instruction CALJIC 8.11 defining implied malice. (CT 10635). The definition of second degree murder based on implied malice, as set forth in these instructions, has been upheld by both federal and state courts against a constitutional challenge. *See Masoner*, 996 F.2d at 1007–08; *People v. Nieto–Benitez*, 4 Cal.4th 91, 106, 13 Cal.Rptr.2d 864, 840 P.2d 969 (1992). Finally, motive is not required to prove second degree murder; to the contrary, no mental state other than implied malice is required. *Masoner*, 996 F.2d at 1007 (citing *People v. Watson*, 30 Cal.3d 290, 300, 179 Cal.Rptr. 43, 637 P.2d 279 (1981)) (upholding second degree murder based on implied malice as defined in CALJIC 8.11).[7] Accordingly, the jury instructions were not misleading and did not violate due process, and trial counsel did not err by failing to object to them.

### e. Reliance on State Agencies and Notice:

■ Petitioner asserts that trial counsel was ineffective for not asserting that the failure of the Board to discipline him for the infants' deaths constitutes lack of notice to

him of wrongdoing, lessening his subjective knowledge of the life-threatening nature of his acts or omissions. This claim lacks merit for several reasons. First, trial counsel developed this defense during the trial[8] and made this argument in closing. (RT 18760–61). Second, petitioner proffers no other evidence which could have been presented by trial counsel regarding this defense. *See Bonin*, 59 F.3d at 834 (9th Cir.1995). Moreover, because the evidence of implied malice was overwhelming, petitioner has not demonstrated a reasonable probability that the jury's verdict would have been altered through the introduction of additional evidence of reliance or lack of notice. *Id.* at 836; *James*, 24 F.3d at 26. Finally, to the extent that petitioner claims that the state was estopped from prosecuting him because the Board had not revoked his license, this defense is devoid of merit. "[W]e do not agree that mere delay in the enforcement of a public right against a public evil can bar appropriate action whenever the public officer involved determines to act." *People v. Arthur Murray, Inc.*, 238 Cal.App.2d 333, 347, 47 Cal.Rptr. 700 (1965); *See also People v. Outdoor Media Group*, 13 Cal.App.4th 1067, 1079, 17 Cal.Rptr.2d 19 (1993) (estoppel may not be invoked against the government where it would operate to defeat the operation of a policy adopted to protect the public); *People v. 2,624 Thirty–Pound Cans of Frozen Eggs*, 224 Cal.App.2d 134, 138, 36 Cal. Rptr. 427, 430 (1964) (the public interest cannot be defeated by the inaction of the public employees).

### f. Pitocin and Condition of Newborns:

■ Petitioner asserts that trial counsel did not investigate and present evidence that the drug Pitocin was not the cause of death

---

7. "California courts have long held that malice may be implied where a defendant with a sufficiently culpable mental state does an act involving a high degree of probability that death will result." *Id.*

8. On cross-examination, a Board officer testified that the Board had the duty to investigate wrongdoing (RT 8186, 15937), and that three of the cases for which petitioner was charged with

murder were closed "with merit" by the Board without referral to the California Attorney General for disciplinary action against petitioner's medical license. (RT 10782–83, 15937, 15942). Trial counsel also established that, while petitioner was on probation, the Board permitted him to deliver infants at patients' homes and in his office. (RT 8186).

in six of the murder counts [9] and that all infants were taken home in satisfactory condition. Because an attempt by the defense to establish these propositions would have been devoid of credibility, counsel did not act unreasonably and petitioner was not prejudiced. *Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2065–67; *Bonin,* 59 F.3d at 833–34; *James,* 24 F.3d at 26. At trial, expert medical testimony established that petitioner's misuse of the drug Pitocin was a contributing factor in a number of the deaths. (*See e.g.,* RT 16219, 16227–30, 16308–09, 16342, 16414, 16452, 16540–41, 16690). At the same time, the overwhelming evidence also established that petitioner's gross mismanagement of the cases ranged far beyond his misuse of Pitocin. (*See e.g.,* RT 16286–90, 16341–44 (Count 1, Johnson); RT 16352–61, 16370–81 (Count 2, Fava); RT 16433–34, 16442–51, 16473–79 (Count 3, James); RT 16981–84, 16991–93, 16999–17003 (Count 4, Ginsberg)); RT 16586–604, 16655–56, (Count 25, Palacios); RT 16670–72, 16682–91, 16715–16 (Count 31, LaVerne)). Thus, even if counsel had presented evidence that in some instances Pitocin was not the direct cause of death, this evidence would not have altered the jury's verdict.

Similarly, petitioner's assertion that "all newborns were taken home in satisfactory condition" directly contradicts the overwhelming evidence at trial. In five of the nine counts, the infants were stillborn or died before they reached home. In the remaining four counts, the testimony belies petitioner's claim. (*See e.g.,* RT 16331–41, 17289–95 (Count 1, Johnson); RT 16554–55, 16570 (Count 8, Diederick); RT 16892–94, 17440–44 (Count 23, Friel)); RT 16708–15 (Count 31, LaVerne). Accordingly, counsel's performance was not deficient for failing to present an untenable defense. *Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2065–67; *James,* 24 F.3d at 26; *Boag,* 769 F.2d at 1344.

### g. Non-homicide Counts:

■ Petitioner contends that trial counsel should have presented evidence of lack of specific intent on the non-murder counts and should have argued that the "Good Samaritan" statute applied to the conspiracy charge. Again, there is no merit to these claims. The five counts of felony practicing medicine without a license (B. & P.C. § 2053) were based on petitioner's aiding and abetting the unlawful practice of medicine by Dolores Doyle, petitioner's assistant. The evidence was overwhelming that petitioner knew Doyle was not licensed. In Count 33, petitioner asked the mother and the grandmother to not mention Doyle's name. (RT 15409–15410, 17193, LaVerne). In other instances, the records show that petitioner either tried to cover up Doyle's involvement or the billing was denied due to Doyle's status. (RT 9996–10002, 10015, 10036–37 (Overt Act 13, Nelson); RT 12603, 12616–17, 12629 (Counts 44, 45, 47, Sedar); RT 12369–12370, 12543, 12556–63 (Counts 49–51, Conner)). Moreover, counsel could reasonably conclude that petitioner's long-term association with Doyle would eviscerate the credibility of a claim that petitioner did not aid and abet Doyle's unlicensed practice of medicine.

■ Petitioner asserts that his counsel were constitutionally required to present a defense that he lacked specific intent with respect to the counts of preparing a fraudulent insurance claim, presenting a fraudulent insurance claim, and grand theft. In light of the established facts, this defense would have been unavailing. One example, Count 6 (Ginsberg), will serve to demonstrate petitioner's fraudulent practices: Although petitioner billed for his services at delivery, he was not even present. (RT 10341, 10361, 10371, 10495, 10942–22, 10966–67). Thus, this defense would have been to no avail.

■ Finally, petitioner asserts that his counsel were constitutionally ineffective for failing to raise a "Good Samaritan" defense to conspiracy, Count 52 (P.C. § 182(a)(1)). However, the Good Samaritan statute is inapplicable to a physician's care of his own patients. *See* B. & P.C. § 2395; *Street v. Superior Court,* 224 Cal.App.3d 1397, 1403, 274 Cal.Rptr. 595 (1990). Thus, this defense, too, would have been to no avail.

---

9. Petitioner makes this assertion for Count 1, Johnson; Count 2, Fava; Count 3, James; Count 4, Ginsberg; Count 25 Palacios; and Count 31, LaVerne.

Because none of the defenses petitioner urges were merited, trial counsel were not ineffective for failing to present them. *Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2065–66; *James,* 24 F.3d 20, 26. The overwhelming evidence of petitioner's guilt to all counts makes it "especially difficult [for petitioner] to show prejudice from a claimed error on the part of trial counsel." *United States v. Coleman,* 707 F.2d 374, 378 (9th Cir.), *cert. denied,* 464 U.S. 854, 104 S.Ct. 171, 78 L.Ed.2d 154 (1983).

### RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order (1) approving and adopting the Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.