139 F.3d 908
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Luis TALAMANTES, Petitioner-Appellant,
v.
Ernest C. ROE, Warden; Daniel E. Lungren, Attorney General,
Respondents-Appellees.
 No. 96-56387.
D.C. No. CV-95-07812-ER (RNB).
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 6, 1998**.
Decided Feb. 10, 1998.
 
 Appeal from the United States District Court for the Central District of California Edward Rafeedie, District Judge, Presiding.
 Before PREGERSON, BEEZER, and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 California state prisoner Luis Talamantes appeals pro se the district court's denial of his 28 U.S.C. § 2254 habeas petition challenging his conviction for second-degree murder. We affirm.
 
 
 3
 * Talamantes first contends that he was deprived of due process because of logically inconsistent jury verdicts on counts I and II of the indictment. We disagree.
 
 
 4
 We faced an almost identical habeas challenge to California convictions for second-degree murder and gross vehicular manslaughter while intoxicated in Masoner v. Thurman, 996 F.2d 1003 (9th Cir.1993). In that case, we held that "a due process challenge to a jury verdict on the ground that convictions of multiple counts are inconsistent with one another will not be considered if the defendant cannot demonstrate that the challenged verdicts are necessarily logically inconsistent." Id. at 1005 (emphasis added).
 
 
 5
 To determine whether a rational factfinder could have found a consistent set of facts supporting multiple convictions, we must look to the jury instructions as given. Id. at 1005-06. In the present case, as in Masoner, the jury was not instructed that it must find the absence of malice as an element of the crime of gross vehicular manslaughter while intoxicated. Instead, the court instructed the jury that to convict Talamantes of gross vehicular manslaughter while intoxicated, they needed to find:
 
 
 6
 1. The driver of the vehicle violated Vehicle Code Section 23153;
 
 
 7
 2. In addition to such violation, the driver of the vehicle committed with gross negligence an unlawful act, namely a violation of Veh.Code 22350, 21460, or committed with gross negligence an act ordinary lawful which might cause death; and
 
 
 8
 3. Such unlawful or negligent act was a proximate cause of the death of a human being.
 
 
 9
 The instruction on second-degree murder, by contrast, required a finding of malice. Thus, it is apparent that the jury made a finding concerning the presence or absence of malice with respect the second-degree murder charge and that charge alone.
 
 
 10
 Talamantes raises two arguments to distinguish Masoner, both of which lack merit. Talamantes first argues that the information on which he was charged defined gross vehicular manslaughter while intoxicated as being "without malice aforethought." Masoner makes clear, however, that it is the actual instructions to the jury, and not language in the Penal Code or information, that determines the nature of what the jury found in rendering its verdict. Id. at 1005-06. Second, Talamantes contends that this case differs from Masoner because the court instructed the jury that "[t]he defendant may be found guilty or not guilty of any or all of the offenses charged except that the defendant cannot be found guilty of both murder and vehicular manslaughter." Although the jury did not follow this instruction, and the court thus ultimately dismissed the gross vehicular manslaughter count, nothing in this instruction or the jury's disregard thereof suggests that the jury found an absence of malice.
 
 
 11
 Accordingly, we hold that the jury's verdicts were not necessarily logically inconsistent and that no due process violation occurred.
 
 II
 
 12
 Talamantes also contends that the trial court improperly coerced a guilty verdict on the second-degree murder charge by inquiring into the numerical count of the jurors' votes. The coerciveness of the state court's inquiry is determined under the totality of the circumstances. See Rodriguez v. Marshall, 125 F.3d 739, 748 (9th Cir.1997).
 
 
 13
 The state court's inquiry into the jury's numerical split did not create any significant threat of coercion. As in Locks v. Sumner, 703 F.2d 403 (9th Cir.1983), the court made a "simple and, on its face, uncoercive inquiry" into the numerical division of the jurors and the jury was not sent back to continue deliberations, but was dismissed for the weekend. Id. at 407. The court did not direct the jurors to reach a verdict or admonish them about the need to do so within a certain time frame. Moreover, the timing of the verdict was not so suspiciously short as to suggest coercion. See United States v. Hernandez, 105 F.3d 1330, 1334 (9th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 227, 139 L.Ed.2d 160 (1997). Finally, the inquiry into the numerical division of the jury was designed to determine not how they stood on the merits of the case, but instead whether further deliberations might assist them in returning a verdict. This is exactly the type of inquiry of which the Supreme Court and this circuit have approved. See Lowenfield v. Phelps, 484 U.S. 231, 240, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988); Rodriguez, 125 F.3d at 749.
 
 
 14
 Talamantes calls special attention to the fact that the court did not, after making its inquiry into the numerical split of the jury, instruct the jurors that they were not to surrender their votes for the sake of the others. An instruction to this effect had been given during the original charge, however, and the court's inquiry did not amount to a de facto Allen charge or otherwise exhibit the kind of coercive taint that would require reinstruction. Indeed, there is nothing in the conduct of the court to suggest that jurors were coerced into changing their views. The court "did not know the identity of the hold-out juror[s], nor did [it] exhort the jurors to reach a unanimous verdict, and the jury was dismissed for the day after responding to the court's inquiry." Rodriguez, 125 F.3d at 749.
 
 
 15
 Thus, under the totality of the circumstances, we hold that the state court's inquiry as to the numerical division of the jury was not coercive.
 
 III
 
 16
 Finally, Talamantes claims that he was denied the effective assistance of counsel. Talamantes, however, has identified neither deficient performance nor prejudice with respect to the alleged instances of ineffective assistance. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 
 
 17
 Counsel's alleged failure to investigate whether the victim was operating his vehicle without a driver's license was neither objectively unreasonable nor prejudicial for reasons well described by the district court:
 
 
 18
 [T]he evidence in the case established that the victim did nothing to contribute to the collision: the victim was driving slowly up to an intersection, with lights on, in a well lit area, and no drugs or alcohol were found in his blood. Petitioner, on the other hand, was exceeding the speed limit, and driving on the wrong side of the road with no lights on and with a blood alcohol level of 0.32 at 4:00 a.m.
 
 
 19
 Similarly, because defendant did not proffer evidence sufficient to satisfy CALJIC No. 4.30, counsel's withdrawal of his request for this instruction appears to have been not only reasonable but prudent. See United States v. Sotelo-Murillo, 887 F.2d 176, 178-79 (9th Cir.1989) (defendant is entitled to an instruction covering a theory of defense only if it has a sound basis in law and there is some foundation for it in evidence); cf. People v. Barrick, 33 Cal.3d 115, 187 Cal.Rptr. 716, 654 P.2d 1243, 1254 (Cal.1982) (evidence of voluntary intoxication does not satisfy CALJIC No. 4.30).[1]
 
 
 20
 Nor was Talamantes' counsel ineffective in conceding counts III and IV of the indictment. In so doing, counsel was making a reasonable tactical decision to concede two lesser counts, which were supported by overwhelming evidence, while vigorously contesting the counts carrying greater punishment. Moreover, given the overwhelming evidence against Talamantes, there is no reasonable probability that the outcome would have been different had counsel not conceded these counts.
 
 
 21
 Finally, counsel cannot have been ineffective for allowing the court to coerce the jury into logically inconsistent verdicts where the court's inquiry into the jury's numerical division was not coercive, the verdicts were not necessarily logically inconsistent, and the manslaughter count was ultimately dismissed.
 
 AFFIRMED.[2]
 
 
 **
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Moreover, an unconsciousness instruction would not have been consistent with the defense theory that Talamantes did not act wantonly or recklessly. See Butcher v. Marguez, 758 F.2d 373, 377 (9th Cir.1985) ("Defense counsel need not request instructions inconsistent with its trial theory.")
 
 
 [2]
 Pursuant to Lindh v. Murphy, --- U.S. ----, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), the Antiterrorism and Effective Death Penalty Act of 1996 does not apply to this appeal