**Nathaniel JAMES, Petitioner–Appellant,**

v.

**Robert G. BORG, Warden; Attorney General of California, Respondents– Appellees.**

No. 92–56543.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 4, 1994.

Decided May 12, 1994.

---

William S. Harris, Stewart & Harris, Pasadena, CA, for petitioner-appellant.

Carol Frederick Jorstad, Deputy Atty. Gen., Los Angeles, CA, for respondents-appellees.

Before: HUG, WIGGINS, and NOONAN, Circuit Judges.

Opinion by Judge WIGGINS.

WIGGINS, Circuit Judge:

Nathaniel James is a state prisoner who petitions for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He appeals from a district court's order denying his petition and dismissing it with prejudice. Petitioner challenges his state murder conviction primarily on the ground that his Sixth Amendment right to be informed of the nature and cause of the charge was violated. Petitioner also asserts that his Sixth Amendment right to receive effective assistance of counsel at trial was denied and that his Fifth Amendment right against self-incrimination was violated. He seeks a retrial. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

### I.

On December 4, 1981, petitioner cruised the Beverly Hills area in a stolen van, drinking alcohol, using drugs and stealing women's purses. The next day petitioner announced to his cohorts that he would show them "how to do a real robbery." Petitioner approached a parked car in which Lev and Rima Pikas were sitting. Petitioner was wearing a short-sleeved shirt. Pointing a gun at Lev Pikas, petitioner demanded money. He then shot both Lev and Rima Pikas. Lev Pikas gave petitioner two blood-stained $20 bills. Upon returning to the van, petitioner boasted to his cohorts that he had "shot the bitch in the temple." Petitioner then threw the gun out the van window; the gun was subsequently found by the police.

Within minutes after the shooting, the police stopped the van. Petitioner was the only person in the van wearing a short-sleeved shirt. The police found Rima Pikas's purse in the van. After petitioner's arrest, the police found two blood-stained bills inside his pocket. There was blood on petitioner's clothing. The blood on the bills and petitioner's clothing was Type A, the blood type of Lev Pikas. An eyewitness identified petitioner as the man who fired the gun. Rima Pikas died as a result of her injuries.

On February 5, 1982, an information was filed, alleging that petitioner committed a murder during the course of a robbery. Specifically, the information charged that appellant "did willfully and unlawfully and with malice aforethought murder Rima Pikas." The information alleged that petitioner had been armed and that he had personally used the firearm. The information also charged petitioner with murder, attempted murder, and two robberies. The information did not allege that petitioner had intent to kill Rima Pikas.

On July 5, 1983, petitioner's trial began in state court. The prosecution tried its case on a felony murder theory. After the defense rested, the prosecution requested and received a jury instruction which included intent to kill as an element of the felony-murder special circumstance charge. Appellant did not object. On September 19, 1983, the jury convicted petitioner of first degree murder. The jury found that: (1) petitioner was armed; (2) petitioner murdered Rima Pikas during the commission of a robbery; (3) petitioner was the actual killer; and (4) petitioner acted with the intent to kill. Petitioner was sentenced to life without possibility of parole.

On appeal, petitioner raised three claims. He argued that: (1) his Sixth Amendment right to be informed of the nature and cause of the charge was violated because he was not given notice that intent to kill was a special circumstance element of murder in the course of a robbery; (2) his Sixth Amendment right to receive effective assistance of counsel at trial was denied; and (3) his Fifth Amendment right against self-incrimination was violated because the prosecutor commented in closing argument on petitioner's failure to submit to a psychiatric interview. The California Court of Appeal rejected petitioner's claims and affirmed his conviction. Petitioner then filed a petition for review with the California Supreme Court, again raising a Sixth Amendment notice claim. This petition was denied on December 19, 1985. Several years later, petitioner filed a second petition for review with the California Supreme Court, asserting an ineffective assistance of trial counsel claim. This second petition was denied on March 27, 1991.

On June 12, 1991, petitioner filed pro se a habeas corpus petition in federal district court. He again raised the three claims he argued before the California Court of Appeal. On May 27, 1992, a magistrate judge issued a report and recommendation that the petition be denied and the action be dismissed with prejudice. First, the magistrate saw no violation of petitioner's Sixth Amendment right to be informed of the nature and cause of the charge on the ground that intent to kill had been omitted. Second, the magistrate found no ground for finding that trial counsel was ineffective. Finally, the magistrate found no violation of petitioner's Fifth Amendment right against self-incrimination. On June 30, 1993, the district court entered an order adopting the magistrate's report and recommendation.

**24**

On July 22, 1993, petitioner filed a timely notice of appeal. The Ninth Circuit issued a certificate of probable cause and appointed counsel for petitioner.

## II.

### A. Failure to Exhaust State Remedies

█ We review de novo the district court's denial of a writ of habeas corpus. *Mikes v. Borg,* 947 F.2d 353, 356 (9th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 3055, 120 L.Ed.2d 921 (1992).

█ In general, a habeas petition should be dismissed if a petitioner has failed to exhaust state remedies as to even one claim. *Rose v. Lundy,* 455 U.S. 509, 513–20, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Mannes v. Gillespie,* 967 F.2d 1310, 1316 n. 6 (9th Cir. 1992), *cert. denied,* — U.S. —, 113 S.Ct. 964, 122 L.Ed.2d 121 (1993); *O'Bremski v. Maass,* 915 F.2d 418, 421 (9th Cir.1990), *cert. denied,* 498 U.S. 1096, 111 S.Ct. 986, 112 L.Ed.2d 1070 (1991). To exhaust state remedies, petitioner must present each of his claims to the state's highest court. In turn, the state's highest court must have disposed of each claim on the merits. *Carothers v. Rhay,* 594 F.2d 225, 228 (9th Cir.1979). A petitioner may, however, choose to strike any unexhausted claims and proceed on the exhausted ones. *Rose v. Lundy,* 455 U.S. at 530, 102 S.Ct. at 1209; *Ostrosky v. Alaska,* 913 F.2d 590, 593 n. 9 (9th Cir.1990); *Neuschafer v. Whitley,* 860 F.2d 1470, 1477 (9th Cir.1988), *cert. denied sub nom. Demosthenes v. Neuschafer,* 493 U.S. 906, 110 S.Ct. 264, 107 L.Ed.2d 214 (1989).

In addition to his three primary claims discussed below, petitioner raises four other claims.[1] Petitioner has not exhausted his state remedies as to these claims, however. (Specifically, petitioner never raised four of

his claims before the California Supreme Court. Consequently, the California Supreme Court never reached the merits of these contentions.) Because exhaustion of state remedies is a prerequisite to federal habeas review, the appeal could be dismissed. *Rose v. Lundy,* 455 U.S. at 513–20, 102 S.Ct. at 1200–04; *Mannes,* 967 F.2d at 1316 n. 6.

█ We decline to dismiss the entire appeal, however. Although petitioner raised these four claims in his pro se opening brief, which is now lodged as an exhibit, petitioner's appointed counsel did not raise them in his opening brief. We therefore choose to infer that petitioner elected to strike these four claims. *Rose v. Lundy,* 455 U.S. at 530, 102 S.Ct. at 1209; *Ostrosky,* 913 F.2d at 593 n. 9; *Neuschafer,* 860 F.2d at 1477.

### B. Sixth Amendment Right to Notice

█ We review de novo the district court's determination that an information filed against petitioner complied with constitutional requirements. *Givens v. Housewright,* 786 F.2d 1378, 1380 (9th Cir.1986) (granting habeas relief because the information failed to state special circumstances element of murder by torture).

█ The Sixth Amendment "guarantees a criminal defendant a fundamental right to be clearly informed of the nature and the cause of the accusation against him." *Nevius v. Sumner,* 852 F.2d 463, 471 (9th Cir. 1988), *cert. denied,* 490 U.S. 1059, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989). To determine whether a defendant has received fair notice of the charges against him, the court looks first to the information. *Lincoln v. Sunn,* 807 F.2d 805, 812 (9th Cir.1987). The principal purpose of the information is to provide the defendant with a description of the charges against him in sufficient detail to enable him to prepare his defense. *United*

---

1. First, petitioner claims that the combination of a defective special circumstance finding and a special finding of intent to kill is not the legal equivalent of a valid special circumstance finding. Second, petitioner claims that the trial court erred in directing the jury to return a special finding on intent to kill. Third, petitioner claims that the case should be remanded to afford the trial court an opportunity to strike the special circumstance finding in the interest of

justice. Finally, petitioner claims that petitioner was denied a fair trial because of the following three acts of prosecutorial misconduct: (1) the prosecutor introduced irrelevant and inflammatory evidence of other crimes and gang membership; (2) the prosecutor vouched for the credibility of accomplices who testified; and (3) the prosecutor commented on the plea agreements reached by the accomplices.

*States v. Lane,* 765 F.2d 1376, 1380 (9th Cir.1985). An information is not constitutionally defective if it states "the elements of an offense charged with sufficient clarity to apprise a defendant of what to defend against." *Miller v. Stagner,* 757 F.2d 988, 994 (9th Cir.) (quoting *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)), *amended,* 768 F.2d 1090 (9th Cir.1985), *cert. denied,* 475 U.S. 1048, 106 S.Ct. 1269, 89 L.Ed.2d 577, *and cert. denied sub nom. Freeman v. Stagner,* 475 U.S. 1049, 106 S.Ct. 1271, 89 L.Ed.2d 579 (1986).

■ The felony-murder special circumstance is applicable to a murder committed while the defendant was engaged in certain felonies, including robbery. Cal.Penal Code § 190.2, subd. (a)(17)(i). The felony-murder special circumstance is generally similar to felony murder. 3 Witkin & Epstein, Cal.Criminal Law, Punishment for Crime, § 1582 at 1886–1887. There are two twists. First, the felony-murder special circumstance requires that the defendant committed the murder in order to advance an independent felonious purpose. *People v. Bonin,* 47 Cal.3d 808, 850, 765 P.2d 460, 484, 254 Cal. Rptr. 298, 323 (1989), *cert. denied,* 494 U.S. 1039, 110 S.Ct. 1506, 108 L.Ed.2d 641 (1990).

■ Second, intent to kill is not an element of the felony-murder special circumstance when the defendant is the actual killer.[2] *People v. Anderson,* 43 Cal.3d 1104, 1147, 742 P.2d 1306, 1331, 240 Cal.Rptr. 585, 611 (1987). Intent to kill was an element of felony-murder special circumstance between 1983 and 1987, however. *Carlos v. Superior Court,* 35 Cal.3d 131, 153–54, 672 P.2d 862, 869, 197 Cal.Rptr. 79, 94–95 (1983), *overruled by People v. Anderson,* 43 Cal.3d 1104, 1147, 742 P.2d 1306, 1331, 240 Cal.Rptr. 585, 611 (1987). In *People v. Garcia,* 36 Cal.3d 539, 684 P.2d 826, 205 Cal.Rptr. 265 (1984), *cert. denied,* 469 U.S. 1229, 105 S.Ct. 1229, 84 L.Ed.2d 366 (1985), the California Supreme Court held that *Carlos* applied retroactively. *Id.* 36 Cal.3d at 549, 684 P.2d at 831, 205 Cal.Rptr. at 270. But, when *Carlos* was

overruled by *Anderson, see Anderson,* 43 Cal.3d at 1147, 742 P.2d at 1331, 240 Cal. Rptr. at 611, confusion arose in the courts over whether *Carlos* or *Anderson* controlled. Thus, in *People v. Poggi,* 45 Cal.3d 306, 753 P.2d 1082, 246 Cal.Rptr. 886 (1988) (en banc), *cert. denied,* 492 U.S. 925, 109 S.Ct. 3261, 106 L.Ed.2d 606 (1989), the California Supreme Court held that *Carlos* governs only when the felony-murder special circumstance is alleged to have occurred after *Carlos* and before *Anderson. Id.* 45 Cal.3d at 326–27, 753 P.2d at 1094–95, 246 Cal.Rptr. at 898–99.

Petitioner argues that *Carlos* controls because *Carlos* applies retroactively. *See Garcia,* 36 Cal.3d at 549, 684 P.2d at 831, 205 Cal.Rptr. at 270. Because the murder was committed in 1981 and the trial began and ended in 1983, all of which pre-dated *Carlos,* he maintains that *Carlos* must govern. Thus, petitioner asserts, intent to kill was an element of felony-murder special circumstance. However, petitioner did not receive notice that intent to kill was an element of felony-murder special circumstance because it was not specified in the information. Thus, petitioner concludes, he was denied a fair trial because he did not have the opportunity to defend himself against this issue at trial.

Appellee argues that *Anderson* controls because *Carlos* governs only when the felony-murder special circumstance is alleged to have occurred after *Carlos* and before *Anderson. See Poggi,* 45 Cal.3d at 326–27, 753 P.2d at 1094–95, 246 Cal.Rptr. at 898–99. Because the murder was committed in 1981 and the trial began and ended in 1983, all of which pre-dated *Carlos, Anderson* must govern. *Carlos* could only control if the felony-murder special circumstance occurred after December 1983 when *Carlos* was filed by the California Supreme Court. The felony-murder special circumstance occurred before December 1983. Thus, appellee asserts, intent to kill was not an element of felony-murder special circumstance. Because petitioner was not entitled to notice of a non-element, appellee concludes, petitioner's right to a fair

---

**2.** Intent to kill is an element of felony-murder special circumstance when the defendant is an aider and abettor, rather than the actual killer.

*People v. Anderson,* 43 Cal.3d 1104, 1147, 742 P.2d 1306, 1331, 240 Cal.Rptr. 585, 611 (1987).

trial was not violated by the omission from the information of the element of intent to kill.

■ Appellee is correct. *Anderson* governs because the felony-murder special circumstance occurred before *Carlos. See Poggi,* 45 Cal.3d at 326–27, 753 P.2d at 1094–95, 246 Cal.Rptr. at 898–99. Because *Anderson* governs, intent to kill was not an element of the felony-murder special circumstance. *See Anderson,* 43 Cal.3d at 1147, 742 P.2d at 1331, 240 Cal.Rptr. at 611. Accordingly, intent to kill was not improperly omitted from the information. Petitioner failed to demonstrate that his Sixth Amendment right to be informed of the nature and cause of the charge was violated. The error alleged by petitioner does not provide a basis for granting a writ of habeas corpus.

## C. Sixth Amendment Right to Effective Assistance of Counsel at Trial

■ To demonstrate ineffective assistance of trial counsel, petitioner must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A deficient performance is one that is "outside the wide range of professionally competent assistance." *Id.* at 689, 104 S.Ct. at 2065. Prejudice requires "showing that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. at 2064. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066.

In his pro se opening brief, petitioner contends that he was denied his Sixth Amendment right to receive effective assistance at trial. Specifically, petitioner claims that trial counsel denied him effective assistance by failing in the following six ways:

### a. Suppression Motion

Petitioner contends that trial counsel should have made a motion to suppress evidence obtained in the warrantless search of the van. Specifically, petitioner asserts that the stop and search of the van violated his Fourth Amendment rights. Consequently, the fruits of the unlawful search should not have been admitted at trial.

■ Petitioner's claim is without merit. To establish that trial counsel's failure to move to suppress the evidence constituted ineffective assistance, petitioner must show both incompetence and prejudice. *See Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986). Petitioner cannot even establish incompetence. Petitioner's counsel's performance was not deficient because petitioner lacked standing to challenge the search. The van was stolen and petitioner knew it was stolen. Only the vehicle's owner or an individual with a legitimate privacy interest in the vehicle may challenge the search. *See United States v. Wanless,* 882 F.2d 1459, 1462 (9th Cir.1989).

### b. Create a Fiction: Petitioner Was Not the Shooter

Petitioner contends that trial counsel should have presented evidence that petitioner was not the shooter.

■ Again, petitioner's claim is baseless. First, petitioner ignores the overwhelming evidence that it was petitioner who murdered Rima Pikas in the course of a robbery. Second, petitioner does not identify what evidence counsel should have presented which would have shown that petitioner did not shoot Lev and Rima Pikas. *See Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief. *Boehme v. Maxwell,* 423 F.2d 1056, 1058 (9th Cir.1970).

### c. Diminished Capacity Defense

Petitioner contends that trial counsel should have prepared and presented a stronger diminished capacity defense.

■ This claim is also without merit. First, petitioner's claim is not supported by the record. For example, a qualified psychiatrist did testify at trial that, in his opinion, petitioner could not have formed the requisite mental states for the charged crimes

because of the large amount of alcohol he had consumed and drugs he had used. Second, the court strongly presumes "that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

#### d. *Insufficiency of the Evidence*

Petitioner contends that trial counsel should have argued that the prosecution's evidence was insufficient to convict petitioner.

 Petitioner's claim is again frivolous. There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *Prantil v. California*, 843 F.2d 314, 316 (9th Cir.) (per curiam), *cert. denied*, 488 U.S. 861, 109 S.Ct. 158, 102 L.Ed.2d 129 (1988). Here, there is overwhelming evidence that petitioner murdered Rima Pikas in the course of a robbery. Because the evidence is overwhelming, petitioner was not prejudiced by trial counsel's failure to raise the issue of the sufficiency of the evidence before the court.

#### e. *Jury Instruction on Special Finding of Intent to Kill*

Petitioner argues that trial counsel should have objected to the trial court's instruction to the jury to make a special finding of intent to kill.

 Petitioner's claim is again without merit. An ineffective assistance of counsel claim based on counsel's failure to object to a jury instruction requires a showing of prejudice. *United States v. Swanson*, 943 F.2d 1070, 1073 (9th Cir.1991) (citing *Gardner v. Ponte*, 817 F.2d 183, 187 (1st Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 134 (1987)). Petitioner cannot make this showing. A finding of intent to kill was unnecessary because intent to kill was not an element of the felony-murder special circumstance. *See Anderson*, 43 Cal.3d at 1147, 742 P.2d at 1331, 240 Cal.Rptr. at 611. A finding of intent to kill was not prejudicial because the error did not deprive defendant of a fair trial. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. In addition to finding intent to kill, the jury specifically found that petitioner murdered Rima Pikas in the course of a robbery and was the actual killer.[3] Given the facts of this case, the result of the trial was reliable. *Id.*

#### f. *Motion to Strike*

Petitioner argues that trial counsel should have moved to strike the special circumstance finding.

 This claim is also baseless. A motion to strike the special circumstance finding would have been futile for three reasons. First, the trial court had already denied a motion to reduce the murder to second degree because of petitioner's diminished capacity. Second, the jury found six factors in aggravation and none in mitigation. Finally, although only 18 years old, petitioner had already amassed a lengthy criminal record. Counsel's failure to make a futile motion does not constitute ineffective assistance of counsel. *See Morrison v. Estelle*, 981 F.2d 425, 429 (9th Cir.1992) (finding that a claim of ineffective assistance of appellate counsel on the ground that counsel failed to argue inadequate notice of the charge must fail because counsel "would not have been successful"), *cert. denied*, —— U.S. ——, 113 S.Ct. 2367, 124 L.Ed.2d 273 (1993); *United States v. Zazzara*, 626 F.2d 135, 138 (9th Cir.1980) (finding that a claim of ineffective assistance of trial counsel on the ground that counsel failed to move to suppress an indictment must fail because such a motion would have been futile).

For the foregoing reasons, petitioner failed to present any persuasive arguments that his Sixth Amendment right to effective assistance of counsel was denied. Not one of the

---

**3.** Furthermore, the failure to object to the trial court's jury instruction to make a special finding of intent to kill may be considered an exercise of reasonable professional judgment. *United States v. Olson*, 925 F.2d 1170, 1175 n. 7 (9th Cir.1991).

six errors alleged by petitioner provides a basis for granting a writ of habeas corpus.

### D. Fifth Amendment Right Against Self-Incrimination

In his closing argument, the prosecutor commented on petitioner's failure to submit to a psychiatric interview. Petitioner claims in his pro se opening brief that the prosecutor's conduct violated petitioner's Fifth Amendment right against self-incrimination. Petitioner contends that the prosecutor's conduct was improper on two grounds. First, in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the Court held that a prosecutor may not comment on a defendant's failure to testify at trial. *Id.* at 615, 85 S.Ct. at 1233. Petitioner asserts that the prosecutor's conduct in the instant case amounts to a violation of the *Griffin* holding.

Second, in *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), the Court held that a psychiatrist who has examined a defendant at the request of the court may not testify adversely to the defendant at trial, reporting the substance of the defendant's disclosures, when the defendant had not been advised that he would be assisting the prosecution, had not sought the psychiatric evaluation and had not attempted to introduce psychiatric testimony himself. *Id.* at 468–69, 101 S.Ct. at 1876. Petitioner asserts that the prosecutor's conduct in the instant case amounts to a violation of the *Estelle v. Smith* holding.

Appellee counters that petitioner's claim that his Fifth Amendment right against self-incrimination was violated lacks substance. First, *Griffin* is inapposite. The prosecutor's comment that petitioner failed to submit to a psychiatric interview is not analogous to a prosecutor's comment on a defendant's failure to testify at trial. Appellee asserts that the two situations are patently different. Second, *Estelle v. Smith* is also inapposite. The prosecutor's comment that petitioner failed to submit to a psychiatric interview is not analogous to a psychiatrist's disclosure of a defendant's responses in a court-ordered interview. Again, appellee asserts that the two situations are entirely different. Appellee further argues that the difference between *Estelle v. Smith* and the instant case is particularly clear, given that petitioner did introduce psychiatric testimony on his own behalf and the psychiatrist by whom he refused to be interviewed was his own expert. *See Estelle v. Smith*, 451 U.S. at 468–69, 101 S.Ct. at 1876.

 Appellee presents the substantially stronger argument. Petitioner failed to explain how his Fifth Amendment right against self-incrimination was violated. Neither of the two cases cited by petitioner provides a basis for granting a writ of habeas corpus.[4]

### CONCLUSION

For the foregoing reasons, we affirm because petitioner failed to establish grounds for relief. He was not denied notice of the charge against him. He was not deprived of effective assistance of counsel. He was not denied a fair trial due to prosecutorial misconduct.

**AFFIRMED.**

---

4. Furthermore, we note that petitioner's counsel did object to the prosecutor's comments regarding petitioner's failure to submit to a psychiatric interview. The trial court sustained this objection and instructed the jury that the prosecutor's comment was not evidence. Jurors are presumed to have performed their official duties faithfully. *United States v. Hendrix*, 549 F.2d 1225, 1230 (9th Cir.), *cert. denied*, 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977).