# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | DIVISION ONE |
| Respondent, | No. 85915-3-I |
| v. | UNPUBLISHED OPINION |
| DAVID MICHAEL ROHRER, | |
| Appellant. | |

DWYER, J. — David Rohrer appeals from the judgment entered on a jury's verdict finding him guilty of three counts of domestic violence court order violation, one count of assault in the fourth degree, and one count of tampering with a witness. On appeal, Rohrer asserts that he was denied his constitutional right to effective assistance of counsel prior to and during trial in this matter. This is so, Rohrer contends, because his attorney failed to object to the recitation of the phrase "domestic violence" in three instances: first, when defense counsel did not move to exclude or redact it from the State's charges read to the jury; second, when defense counsel did not move to redact it from the previously entered domestic violence no-contact order against him, which was admitted as an exhibit; and third, when counsel stipulated that Rohrer's prior convictions were crimes of domestic violence. Rohrer further contends that his trial counsel's performance was deficient because his counsel failed to object to the inclusion of the word "perpetrator" in that same stipulation, which was read to the jury, and

failed to object to purportedly improper opinion testimony by a police officer at trial. Concluding that his attorney's behavior did not constitute ineffective assistance of counsel, we affirm.

I

Rohrer and Bernadine Hunt were in a relationship for approximately 26 years and had two children together. They all lived together in a recreational vehicle (RV). Eventually, a domestic violence no-contact order was entered against Rohrer on Hunt's behalf and, in July 2018, Rohrer was convicted of violating that court order. The court therein issued another domestic violence no-contact order, prohibiting Rohrer from having any contact with or coming within 1,000 feet of Hunt. The order was set to expire in July 2023. On May 7, 2020, Rohrer was convicted of violating the July 2018 domestic violence no-contact order.

The present case concerns another alleged violation occurring in February 2022. On February 27, Hunt placed a call to 911 and told the emergency operator it was a "domestic violence" incident, that Rohrer was drunk and had slapped her face, grabbed her neck, and shoved her into some propane tanks. During the call, Hunt was crying, stated that she was injured, and said that she "can barely move." She also requested an ambulance. Hunt stated that she was calling 911 from just outside the RV that she and Rohrer co-owned and that she and Rohrer were living in the RV together in violation of the 2018 no-contact order.

After the physical confrontation, Hunt said, she went outside to her car. Her brother Buckley was waiting there. She made the call to 911 from inside her car. During the call, Hunt told the 911 operator that "he" was coming toward her and coming out toward the car. She told her brother to lock the car and its windows and said "I'm scared. He's banging on my car right now" and "he wants to get in."

Police officers and Tacoma Fire Department personnel were sent to the scene. Hunt and Buckley drove a short distance down the street to wait for help. Officer Scott Hendershot soon arrived and interviewed Hunt. Hunt explained that she and Rohrer had been drinking heavily and were arguing when he slapped her and pushed her down. Officer Hendershot noted her condition and wrote in his report that she had a redness around her neck and bruising on her right hip. Officer Hendershot also noted that Hunt said she was in extreme pain and was having trouble moving. After Officer Hendershot's assessment, fire department medics evaluated Hunt and she was transported to the hospital to receive medical treatment. Officer Hendershot, along with several other officers, proceeded to the RV and arrested Rohrer.

Rohrer was initially charged with two counts of domestic violence court order violation by knowingly having contact with an intimate partner in violation of a court order and one count of assault in the fourth degree. By amended information, the State later added another count of domestic violence court order violation and one count of tampering with a witness based on Rohrer's continued contact with Hunt in multiple jail calls beginning on February 28, 2022.

3

After arraignment, Rohrer was in custody at the Pierce County Detention and Corrections Center. Between February 28, 2022 and April 24, 2022, Rohrer telephoned Hunt approximately 20 times from the jail. In so doing, he dialed both Hunt's brother's phone number as well as Hunt's own cell phone number. During jail call number 2, Rohrer apologized to Hunt, said that he loved her and that he had been drunk, had blacked out, and was "on auto pilot" on the night of the incident. Thus, he stated, he did not remember his actions. Hunt answered: "You know I went to the hospital last night," and "Your autopilot fucked my shit up. Me and my car."

In subsequent jail calls, Rohrer referred to Hunt by different names, including Katie and Cathy. In the conversations, both Hunt and Rohrer referred to "Bernadine" in the third person. In call number 17, Rohrer asked Hunt to recant her story and to tell the police that there had been no assault and that her injuries were from an accidental fall. Rohrer told Hunt to tell the story that he was sleeping in the dark RV, he had sat up and startled her when she entered it, and this caused her to fall onto the propane tanks and injure herself. He told her to "take one for the team" and to "cry wolf," suggesting that she tell the prosecutor that she had lied about the assault. Rohrer said to "just go with my story. It works."

On April 4, 2022, Hunt submitted a written statement to Rohrer's defense counsel, who then sent the statement to the prosecutor. In the written statement, Hunt recanted her initial allegation in the 911 call. She explained that on February 27, 2022, she had been staying at her daughter's house. She needed

4

medication from the RV, but she was intoxicated, so she asked her brother Buckley to drive her over to pick it up. She did not know that anyone was there at the time, and when she went inside, Rohrer had startled her, causing her to stumble, trip, and fall. Consistent with her written recantation, Hunt testified at trial that Rohrer had not caused her injuries.

In July 2022, the parties argued motions in limine. Defense counsel moved to prohibit the State from introducing certain evidence, including the 911 call recording. Defense counsel argued that the 911 call should be excluded because it did not qualify as a present sense impression. The trial court disagreed. The court stated that the 911 call was admissible as a combination of present sense impression, excited utterance, and then existing mental, emotional, or physical condition. But the court also said that some redactions needed to be made from the call.

Thereafter, defense counsel and the prosecutor agreed upon redactions of certain segments of the 911 call, including references to a firearm, fireworks being set off by Rohrer, speculation about what Rohrer would do to officers if Hunt called 911, and background comments by Hunt's brother. In addition, because Hunt had responded to the 911 dispatcher's question about why she was calling 911 by saying "domestic violence," defense counsel also moved to redact Hunt's reference to "domestic violence" from the 911 call recording:

> I would also like redacted the very first part of the phone call is when the call is connected, dispatch asks, "Why are you calling?" And it indicates "domestic violence." . . . "Domestic violence" is something that is defined by the court to the jury. There is a legal definition for that. So to have the caller call in and say it's domestic

5

violence when the Court hasn't instructed the jury that or what domestic violence is, I believe it's improper that that part of the recording indicating that this is the type of crime it is, it's domestic violence, because nothing's been established in regard to relationship or that any crime even occurred between those parties.

The court denied defense counsel's request, concluding that "domestic violence is . . . a term of art . . . that's used commonly, both in legal vernacular and just everyday vernacular" and was not prejudicial.  Later, during voir dire, the prosecutor asked prospective jurors whether they were familiar with the phrase "domestic violence" and "DV."  The prospective jurors indicated that they were.

Prior to trial, defense counsel also moved to prohibit the State from introducing evidence of Rohrer's criminal history.  Defense counsel's motion was discussed by the parties and the court on three separate occasions.  During a July 2022 motion hearing, defense counsel said that he had consulted with Rohrer in regard to stipulating to two prior convictions that the State had to prove to elevate the two no-contact order violations to felony status.  Defense counsel informed the court that they would stipulate to those convictions.

On August 8, 2022, the parties informed the court that they had agreed to the stipulation, but they were still discussing its wording due to defense counsel's expressed concerns with it.  When the stipulation was finished, Rohrer initialed it and confirmed with the court that he had discussed it with his attorney, understood it, and agreed.  The written stipulation read as follows:

> IT IS HEARBY STIPULATED by and between the parties as follows: The parties have agreed that certain facts are true. You must accept as true that the *person* before the court who has been identified in the charging document as Defendant David Rohrer, was convicted on July 25, 2018 of Domestic Violence Court Order

6

Violation in State of Washington vs. David Rohrer, Pierce County Superior Court Cause #18-1-02540-2.

You must also accept as true that the *person* before the court, who has been identified in the charging document as Defendant, David Rohrer, was convicted on May 7, 2020, of Domestic Violence Court Order Violation in State of Washington vs. David Rohrer, Pierce County Superior Court Cause #20-1-01173-0.

The stipulation is to be considered evidence only of the prior conviction element in Counts I – Violation of a Court Order, 2 – Violation of a Court Order, and 4 – Violation of a Court Order. You are not to speculate as to the nature of the prior conviction. You must not consider the stipulation for any other purpose.

(Emphasis added.) (Bold face omitted.)

On August 10, 2022, a two-day trial commenced. During trial, the State played audio recordings to the jury of the redacted 911 recording and of five of Rohrer's recorded jail calls. The 911 call and the jail calls were played on the second day of trial, during the State's direct examination of Officer Hendershot.

Officer Hendershot testified, in pertinent part, that he saw Hunt in her car immediately following the incident with Rohrer and that he observed her emotional and physical condition in a location close to the RV, at which he later arrested Rohrer. During the officer's testimony, defense counsel interposed eight objections, most of which were overruled by the court. The testimony included the following exchanges:

Q. And what did you see when you arrived?
A. She was in the backseat of a vehicle. She appeared to be in significant pain, and I spoke with her in the backseat of the vehicle about what had occurred that evening.
Q. How could you tell -- and I'm sorry, I'm going to stop you there. How could you tell she was in significant pain?
A. So she was kind of leaned back on her left side, and she kept grimacing or, you know, kind of yelling that she was in pain.
[DEFENSE COUNSEL]: Objection.

7

THE COURT: Overruled. Continue.

Q. (By [PROSECUTOR]) You can carry on.

A. She kept grimacing and yelling and she said several times she was in significant –

[DEFENSE COUNSEL]: Objection.

THE COURT: Statement of an existing physical condition. Overruled.

Q. (By [PROSECUTOR]) You can continue, Officer.

A. I believe the question was how could I tell she was in pain?

Q. That's correct.

A. Those were the indicators I was seeing.

Q. Did you observe any injuries on her?

A. She had some redness on her right cheek and then what appeared to possibly be some bruising on her lower right side.

Q. Did she indicate how she got the injuries?

A. Yes. She had advised she was –

[DEFENSE COUNSEL]: Objection.

THE COURT: This sounds like hearsay.

[PROSECUTOR]: Well, Your Honor, I think it goes to officer's state of mind with regards to –

THE COURT: Well, then that's irrelevant.

[PROSECUTOR]: Well.

THE COURT: Objection sustained.

Defense counsel then began cross-examination of Officer Hendershot, eliciting testimony from the officer that police officers are dispatched to a scene depending on priority of the type of 911 call. He asked Hendershot whether a report of domestic violence escalates such a call into a priority call.

Q. And it [domestic abuse tag] makes your -- makes the situation on the dispatch a little bit more serious?

A. I suppose, but generally at that point dispatch is a little bit more removed from it.

Q. Okay. So if the dispatch is a DV verbal, that's different than a DV physical; correct?

A. Correct.

Q. Okay. And if someone alleges DV physical, it is more of a concern to you; correct?

A. Correct.

Q. And so that becomes a triage situation that, okay, that's more important.

A. Correct.

8

Q.  So you're going to respond quickly; correct?
A.  Correct.
Q.  And you're going to be looking for something to be consistent with that altercation; correct?
A.  Correct.
Q.  Because it's a little bit more than a verbal; correct?
A.  Correct.

Defense counsel asked if Officer Hendershot had, in actuality, seen Rohrer and Hunt together that night, to which he responded, "no."

On redirect examination, the prosecutor sought to elicit from Officer Hendershot whether he had concluded that a court order violation had occurred. Before he could testify as such, the trial court judge intervened.

BY [PROSECUTOR]
Q.  Now, during cross-examination, defense counsel asked you whether or not you had actually [observed] any order violation that occurred on February 27th.  You said no; correct?
A.  Correct.
Q.  But based on your investigation, based on your observations, and based on what you were told that day and –
THE COURT:  Let's -- if you're going where I think you're going –
[PROSEUCTOR]:  Okay. Let me rephrase the question.
Q.  (By [PROSECUTOR]) So although you did not observe anything, was your conclusion –
THE COURT:  That's the problem.
[PROSECUTOR]:  Okay.  I really want to get that in there.
THE COURT:  I know you do. The officer's opinion about this doesn't matter.  What he observed -- the conclusions to be reached is to be reached by the jury.  He can testify as to what he observed and heard and all that kind of stuff, but his conclusion about what it all means is something else.
[PROSECUTOR]:  I understand, Your Honor.  Still thinking about it.
THE COURT:  Lawyers are persistent.
[PROSECUTOR]:  We are persistent, Your Honor. It's very true.
THE COURT:  And feel free to just sit down without asking any further questions.  No one's going to -- no one will complain.

9

Thereafter, the court read the stipulation to the jury, once substituting the word "perpetrator," as set forth in the written stipulation, for the word "person":

> THE COURT: All right. Ladies and gentlemen, the parties have asked that I read this stipulation to you. It is hereby stipulated by and between the parties as follows: The parties have agreed that certain facts are true. You must accept as true that the *perpetrator* before the court who has been identified in the charging document as defendant David Rohrer was convicted on July 25, 2018, of domestic violence court order violation in State of Washington vs. David Rohrer, Pierce County Superior Court Cause No. 18-1-02540-2. You must also accept as true that the *person* before the court who has been identified in the charging document as defendant David Rohrer was convicted on May 7, 2020, of domestic violence court order violation in State of Washington vs. David Rohrer, Pierce County Superior Court Cause No. 20-1-1173-0. The stipulation is to be considered evidence only of the prior conviction element in Counts 1, violation of a court order; 2, violation of a court order; and 4, violation of a court order. You are not to speculate as to the nature of the prior conviction. You must not consider the stipulation for any other purpose.

(Emphasis added.) Neither party objected to the court's language substitution, and the record does not show that anyone noticed the variance or that it had any effect on the jury.

Following the reading of the stipulation, the State rested its case in chief. Defense counsel did not call any witnesses and also rested.

The jury convicted Rohrer of three counts of violation of a domestic violence court order, one count of assault in the fourth degree, and one count of tampering with a witness. Counts 1 and 2 were originally charged as alternative means for the same incident and the jury found Rohrer guilty on both counts. Therefore, the State moved to dismiss count 1 with prejudice. Rohrer was sentenced, on the basis of the remaining four counts, to 60 months incarceration.

10

Rohrer now appeals.

II

Rohrer first asserts that he was denied effective assistance of counsel because his attorney did not object to the court's utterance of the word perpetrator when orally reading the parties' stipulation to the jury. Rohrer next contends that he was denied effective assistance of counsel when his attorney did not object to the portion of Officer Hendershot's testimony in which he purportedly provided improper opinion testimony. Finally, Rohrer contends that his attorney rendered ineffective assistance of counsel by not objecting to the phrase "domestic violence" as it appeared in the amended information, in the domestic violence no-contact order he was alleged to have violated, and in the parties' stipulation to his history of violating domestic violence no-contact orders. We disagree.

A

The United States Constitution sets forth that "[i]n all criminal prosecutions, the accused shall . . . have the assistance of counsel for his defense." U.S. CONST. amend. VI. This right is not sufficient unless it is the right to "effective" counsel. McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). The Washington Constitution affords a similar guaranty. CONST. art. I, § 22.

The United States Supreme Court's decision in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), provides the governing standard for claims of ineffective assistance of counsel. "Constitutionally

ineffective assistance of counsel is established only when the defendant shows that (1) counsel's performance, when considered in light of all the circumstances, fell below an objectively reasonable standard of performance, and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." State v. Woods, 198 Wn. App. 453, 461, 393 P.3d 886 (2017) (citing Strickland, 466 U.S. at 687). Failure to establish either prong of the test ends the inquiry and is fatal to the claim of ineffective assistance of counsel. Strickland, 466 U.S. at 687; State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996), overruled on other grounds by Carey v. Musladin, 549 U.S. 70, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006). The defendant bears the burden of demonstrating both deficient representation and prejudice. In re Det. of Hatfield, 191 Wn. App. 378, 401, 362 P.3d 997 (2015).

"Because the presumption runs in favor of effective representation, the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." State v. McFarland, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). "[T]he presumption of adequate representation is not overcome if there is any 'conceivable legitimate tactic' that can explain counsel's performance." Hatfield, 191 Wn. App. at 402 (quoting State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)); see also State v. Grier, 171 Wn.2d 17, 33-34, 246 P.3d 1260 (2011); State v. Kyllo, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). Prejudice is established when there is a reasonable probability that the outcome of the proceedings would have been

12

different had counsel's performance not been deficient.  McFarland, 127 Wn.2d at 337.  Strickland reminds us that "advocacy is an art and not a science," and there are many ways to provide effective assistance.  466 U.S. at 681.  "Even the best criminal defense attorneys would not defend a particular client in the same way."  Strickland, 466 U.S. at 689.

The defendant bears the burden of establishing deficient performance. McFarland, 127 Wn.2d at 335.  Rohrer must show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,'" and we must conclude that the errors undermined our confidence in the outcome of the trial.  State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987) (quoting Strickland, 466 U.S. at 694).  To prevail on his claim of deficient performance, based on the assertion that defense counsel should have moved to exclude or objected to the utterance of the term "perpetrator," the phrase "domestic violence," and purportedly improper opinion testimony, Rohrer must show that (1) each decision not to object was not a legitimate strategic decision, (2) an objection would likely have been sustained, and (3) there is a reasonable probability that the jury verdict would have been different with a proper objection.  In re Pers. Restraint of Davis, 152 Wn.2d 647, 714, 101 P.3d 1 (2004); State v. Saunders, 91 Wn. App. 575, 578, 958 P.2d 364 (1998).

It is a widely recognized trial tactic to withhold an objection in order to downplay or not highlight information presented by the opponent, State v. Vazquez, 198 Wn.2d 239, 248, 494 P.3d 424 (2021) (quoting State v. Crow, 8

13

Wn. App. 2d 480, 508, 438 P.3d 541 (2019)), and "[c]ounsel's failure to make a futile motion does not constitute ineffective assistance of counsel." James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994). More broadly stated, "the failure to take a futile *action* can never be deficient performance." Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) (emphasis added); see also United States v. Zazzara, 626 F.2d 135, 138 (9th Cir. 1980). "[A] reviewing court must consider what would likely have happened if the defendant had timely objected." State v. Emery, 174 Wn.2d 741, 763, 278 P.3d 653 (2012). Moreover, "'[o]nly in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal.'" State v. Johnston, 143 Wn. App.1, 19, 177 P.3d 1127 (2007) (quoting State v. Madison, 53 Wn. App. 754, 763, 770, P.2d 662 (1989)).

B

Rohrer first asserts that defense counsel was deficient for agreeing that Rohrer could be referred to as "the perpetrator" before the court, and that his attorney's performance was deficient when he did not object to the trial court referring to him as a "perpetrator" while reading the stipulation concerning his prior criminal convictions to the jury. Rohrer's assertion fails.

As an initial matter, the parties' original written stipulation set forth the word "person," not "perpetrator." However, the trial court, in reading the stipulation to the jury, once substituted the word "perpetrator" for the word "person." Although a challenge to the utterance of the word "perpetrator" is presented on appeal, there was no discussion of its use in the trial court.

Although both parties agreed to the stipulation as drafted, neither party objected when the trial court substituted the word "perpetrator" for the word "person" during trial. It is not clear from the record that anyone noticed the change in what the judge read, nor is it clear whether the judge's word substitution was inadvertent. Indeed, neither appellant nor respondent acknowledge the word substitution in their briefing to this court. In fact, that the utterance seems to have gone unnoticed at the time indicates that the word change likely had no effect on the jury.

After reading the stipulation, the judge proceeded to instruct the jury.

There are two parts to this assignment of error: (1) an assertion of deficient performance because defense counsel supposedly agreed to stipulate to the use of the word "perpetrator," and (2) an assertion of deficient performance by defense counsel for not objecting to a judicial recitation of the word "perpetrator" during trial. In connection with this second assertion, Rohrer claims that the judge's utterance constituted an improper judicial comment on the evidence. None of these arguments pan out.

First, Rohrer's attorney never agreed to stipulate to the judge uttering the word "perpetrator." Rohrer's first claim thus fails because it lacks factual support.

Second, the utterance of the word perpetrator did not constitute an improper judicial comment on the evidence.[1] The purpose of the stipulation was

---

[1] "A statement by the court constitutes a comment on the evidence if the court's attitude toward the merits of the case or the court's evaluation relative to the disputed issue is inferable from the statement." State v. Lane, 125 Wn.2d 825, 838, 889 P.2d 929 (1995). Lane explains that the "touchstone of error in a trial court's comment on the evidence is whether the feeling of the trial court as to the truth value of the testimony of a witness has been communicated to the jury." 125 Wn.2d at 838. And "[a] court does not comment on the evidence simply by giving its

to inform the jury that Rohrer was the perpetrator of the past qualifying offenses of domestic violence no-contact order violations, as evidenced by his convictions in the referenced cases.  The stipulation was entered into because the State needed to prove the prior convictions to elevate two of the counts to felonies. Defense counsel agreed to stipulate because he sought to avoid exposing the jury to proof of these offenses and thus potentially allowing more damaging evidence before the jury than that inherent in simply admitting to the prior convictions. The purpose of the stipulation was not to comment on the currently pending charges before the jury.  The judge never said that Rohrer was the perpetrator of any offense charged in this case.  Instead, the judge identified Rohrer as the perpetrator of the offenses referenced in the stipulation, as established by his convictions thereof.  This was both true and agreed to be true by both parties.

It is clear from the record that the stipulation referred to Rohrer's prior criminal convictions, not to any pending charges.  Thus, there was no judicial comment on the evidence and no objection on this basis was warranted.[2]

This claim of ineffective assistance of counsel thus fails.

C

Rohrer next contends that his counsel's performance was deficient because his attorney did not object to the purportedly improper opinion testimony of Officer Hendershot.  Once again, his claim fails.

---

reasons for a ruling." In re Det. of Pouncy, 144 Wn. App. 609, 622, 184 P.3d 651 (2008) (citing State v. Dykstra, 127 Wn. App. 1, 8, 110 P.3d 758 (2005)). See also WASH. CONST. art. IV. §16.
    [2] On appeal, Rohrer brings no claim that trial counsel rendered ineffective assistance of counsel based on counsel apparently not noticing the judge's word substitution.

"Opinions on guilt are improper whether direct or by inference." State v. Montgomery, 163 Wn.2d 577, 594, 183 P.3d 267 (2008). A police officer's testimony carries an "aura of reliability." State v. Demery, 144 Wn.2d 753, 765, 30 P.3d 1278 (2001). "But police officers' opinions on guilt have low probative value because their area of expertise is in determining when an arrest is justified, not in determining when there is guilt beyond a reasonable doubt." Montgomery, 163 Wn.2d at 595. Police officers should not testify to core issues in a case, such as the defendant's intent. This is especially so when such an issue is the sole contested issue at trial. Montgomery, 163 Wn.2d at 594. This does not mean that officers cannot testify to what they did or when they did it. Similarly, they may testify to what they knew at the time they took any particular action.

Here, the State asked Officer Hendershot if, based on his experience and observations, he thought there had been an assault committed on Hunt. The officer said yes. During a records search, the officer also discovered that there was a no-contact order against Rohrer and that Rohrer was inside the RV.

Officer Hendershot was put on the stand to recount the events of his interview with Hunt and subsequent arrest of Rohrer. During questioning, the State began to elicit testimony from the officer about his impressions of Rohrer's guilt in the alleged violation of domestic violence no-contact order and the assault. The court interjected and cut off the State's line of questioning when, in the court's view, it strayed too far. Rohrer's counsel did not err by not objecting to such testimony by Officer Hendershot, given that the trial court itself actively regulated the presentation of this testimony.

Moreover, "'[o]nly in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal.'" Vazquez, 198 Wn.2d at 248 (quoting Crow, 8 Wn. App. 2d at 508).

This is not such a circumstance. The fact that Rohrer was arrested by an officer who believed himself to be justified in doing so was not central to the State's case. There is no reason to believe that the jury's verdict would have been altered in any way had defense counsel acted in any different manner. Neither deficient performance nor prejudice is established. This claim of ineffective assistance of counsel fails.

D

Next, Rohrer contends that his counsel's performance was deficient because he did not object to the mention of the term "domestic violence" in three instances: (1) in the domestic violence no-contact order he was alleged to have violated, (2) in the stipulated history of his convictions for violations of a domestic violence no-contact order that were offered as proof elevating counts 1 and 4 to felonies, and (3) in the charges as set forth in the State's amended information and read to the jury. Rohrer fails to establish that defense counsel's performance was deficient on these bases.

In these three instances, Rohrer does not establish that any objections would likely have been sustained. We say this in light of the trial court's explicit previous recognition of the term "domestic violence" as one that is familiar to jurors and commonly used in the community. Indeed, the trial judge, on this very

basis, denied a similar motion brought by defense counsel. Counsel was not obligated to engage in a futile act. Rupe, 93 F.3d at 1445; James, 24 F.3d at 27.

As previously mentioned, defense counsel had previously asked the trial court to redact references to "domestic violence" from the 911 call recording. And as previously explained, the trial judge denied the request. Defense counsel had no reason to expect different replies in response to similar motions.

1

Rohrer first asserts that counsel was deficient for not moving to redact the term domestic violence from the applicable no-contact order. Rohrer contends that, although the State was required to prove that there existed a "no-contact order" that was violated, the State was not required to prove the order was designated as a "domestic violence no-contact order." Rohrer avers that the alleged classifications of the order as domestic violence were irrelevant and prejudicial, painting him as a violent person and therefore more likely to have committed the current charges. We disagree.

Our Supreme Court's opinion in State v. Taylor, 193 Wn.2d 691, 444 P.3d 1194 (2019), controls this argument. Taylor held that the trial court therein did not abuse its discretion by admitting a "domestic violence" no-contact order into evidence in a prosecution for violating that order. Taylor explains that in domestic violence cases, a no-contact order "provides the specific restrictions imposed on a defendant, is closely related to a felony violation of a no-contact order charge, and is evidence of multiple elements of that offense." 193 Wn.2d at 694. As the court explained:

A domestic violence no-contact order provides the date the order was entered, the order's expiration date, the protected party, the specific restrictions on contact between the defendant and the protected party, that consent cannot be used as a defense, and that the defendant knows of the order's existence and its contents. The introduction of a no-contact order provides evidence of multiple elements of a felony violation of a no-contact order charge and allows the State to present the jury with a full narrative of the events leading to the charged offense.

Taylor, 193 Wn.2d at 701.

The Taylor decision plainly indicates that any objection would have been futile. Defense counsel was not deficient for not objecting.

2

Next, Rohrer asserts that defense counsel was deficient because he did not move to redact or exclude the phrase "domestic violence" from the parties' stipulation to his prior convictions. Again, we disagree.

Once again, Taylor supports this assessment. Taylor held that when a domestic violence no-contact order was at issue in a case concerning violations of such orders, the State was not required to accept the defendant's offered stipulation. 193 Wn.2d at 696. Thus, to obtain agreement to a stipulation, defense counsel was required to reach agreement with the prosecutor. Rohrer does not show that the prosecutor would have agreed to a stipulation as proposed by Rohrer on appeal. Thus, trial counsel's actions plainly fall within the ambit of conceivable and reasonable trial tactics and are, accordingly, not shown to be deficient.

This case differs from those cases in which a general legal status—such as "felon"—underlies a charge. Of great import is that the court in Taylor

20

declined to follow the United States Supreme Court's holdings in <u>Old Chief v. United States</u>, 519, U.S. 172, 191-92, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997), in which the high court ruled that the prejudice of revealing the particular crimes that gave the defendant the legal status of "felon" outweighed the probative value of naming the offenses. In <u>Old Chief</u>, the defendant was charged with being a felon in possession of a firearm. A felon is not legally permitted to possess a firearm and, thus, the defendant's status of being a "felon" was necessary to prove the charge. 519 U.S. at 201. However, proof of the particular crime that resulted in the defendant's felon status was not pertinent to proving the charge, the <u>Old Chief</u> court reasoned. 519 U.S. at 190.

Because of the potential prejudice in the admission of evidence of prior convictions, when the status of the defendant as a felon is an element of the charged offense, <u>Old Chief</u> provides that the State must enter into a stipulation with the defendant so as to ameliorate the prejudice. <u>Taylor</u>, 193 Wn.2d at 699-700. This is an exception to the general rule that the State is never "required to accept a defendant's offered stipulation regarding an element of the crime charged." <u>Taylor</u>, 193 Wn.2d at 697 (citing <u>State v. Brett</u>, 126 Wn.2d 136, 159, 892 P.2d 29 (1995)).

Here, the element at issue does not concern Rohrer's general legal status. Rather, it relates to the charge of violation of a domestic violence no-contact order. Rohrer was charged with engaging in the same or similar conduct on at least two prior occasions, and proving this allegation to be true was necessary for the State to prove all of the elements of two of the charges brought in this case.

The State was required to prove Rohrer's two prior domestic violence court order violations in order to elevate the current violations to felony charges and, thus, the purpose of the stipulation was to prove the existence of the qualifying offenses. The fact that the prior violations were for domestic violence offenses was pertinent. Taylor plainly indicates that any prejudice was outweighed by the State's need to prove the crimes.

Rohrer's defense counsel's agreement to the stipulation was strategic and was, in counsel's judgment, beneficial to Rohrer's case. It cannot be said that no reasonable attorney would seek such a stipulation and it is not established that the State would have agreed to a stipulation with any other wording.

Moreover, counsel was given the opportunity to voir dire the jury with regard to the term "domestic violence." There is no indication that any seated juror expressed any concerning view in response to the questioning. Finally, the defendant's claim of prejudice in this case is little different from the defendant's claim in Taylor. Taylor controls our analysis.

Rohrer establishes neither deficient performance nor prejudice. His ineffective assistant of counsel claim brought on this basis fails.

3

Finally, Rohrer asserts that his counsel provided ineffective assistance of counsel by not moving to exclude or redact the domestic violence allegation from the current charges and by not objecting to the court's reading of the charges brought, including the mention of domestic violence, to the jury. Once again, we disagree.

The formal charges against Rohrer were properly listed. There is little reason to believe that the court would have deleted the reference to "domestic violence" in the State's amended information because the State's formal charges against Rohrer were for violating a "domestic violence no-contact order." The inclusion of the term "domestic violence" when reciting the charges brought to the jury at the beginning of trial was no more inherently prejudicial to Rohrer than it would be in other criminal cases, as when the court recites the charges brought as "assault" or "murder."

Significantly, the fact that the jury was informed of the charges brought was not evidence. The charges were read to the jurors before trial began, at the voir dire stage. The court properly instructed the jury that the amended information was only an accusation and was not being offered as evidence. Because the charges were not evidence, they were not, as such, evidence central to the State's case and defense counsel would have no obligation to object. Moreover, the judge instructed the jury to determine the facts only from the evidence introduced in court:

> So this is a case that's State of Washington vs. David Michael Rohrer, and in a document called an information, the defendant David Michael Rohrer is charged with five offenses. In Counts 1, 2, and 4, he is charged with the crime of domestic violence court order violation. In Count 3 he is charged with assault in the 4th degree. In Count 5 he is charged with tampering with a witness. The State further alleges that the defendant committed each of these offenses against an intimate partner. . . .

> Now, the defendant has entered a plea of not guilty, and that plea puts at issue every element of each crime charged *Now, the information document in this case is only an accusation against the defendant which informs the defendant of the charge, or in this case, charges. You are not to consider the filing of the information*

23

*or its contents as proof of the matters charged. It is your duty to determine the facts in this case from the evidence introduced in court. . . .*

*A defendant is presumed innocent. This presumption continues throughout the entire trial unless you find during your deliberations that it has been overcome by the evidence* beyond a reasonable doubt.

(Emphasis added.)

Competent defense counsel are aware that the courts presume that jurors will follow the trial court's instructions on the law. State v. Kirkman, 159 Wn.2d 918, 928, 155 P.3d 125 (2007). Here, we cannot say that no competent lawyer would view an objection as futile, given the state of the law. Rohrer does not establish deficient performance on this claim.

Here, the trial judge clearly instructed the jurors that they were "not to consider the filing of the information or its contents as proof of the matters charged." Given the trial court's prior ruling regarding use of the term "domestic violence" in the 911 call, given the court's instruction to the jury preceding voir dire, given the state of the law concerning the presumption that jurors follow the court's instructions, and given the knowledge that voir dire questioning on the subject and the juror's reaction to the term "domestic violence" was to be allowed, we cannot say that no competent lawyer would have refrained from objecting.

Nor does Rohrer establish prejudice. With respect to this question, Strickland itself counsels:

An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, "nullification," and the like. A defendant has no entitlement

24

>  to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed. The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision.

466, U.S. at 695.

Applying this standard, any potential prejudice was obviated by the court's instruction.

One final note. Competency of trial counsel is determined based on the entire record, McFarland, 127 Wn.2d at 335, and "in light of all the circumstances." State v. Weaville, 162 Wn. App. 801, 823, 256 P.3d 426 (2011). Prejudice is determined "'in light of the strength of the government's case.'" Davis, 152 Wn.2d at 739 (internal quotation marks omitted) (quoting Rios v. Rocha, 299 F.3d 796, 808-09 (9th Cir. 2002)).

The record herein reflects that the State's evidence against Rohrer was overwhelming. Rohrer has not demonstrated that, even if his defense counsel had in some way been deficient (which we do not hold), the result of the proceeding would have been different. Indeed, Rohrer has utterly failed to establish that his "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just

result." <u>Strickland</u>, 466 U.S. at 686.  This was required of him in order for him to prevail on appeal.

Affirmed.

_Dugan, J._

WE CONCUR:

_Feldman, J._        _Birk, J._